18666

The STATE, Respondent, v. Jacob JENKINS, Appellant
(155 S. E. (2d) 624)

*Messrs. Fred Henderson Moore* and *John Howard Wrighten,* of Charleston, *for appellant,*

*Messrs. Arthur G. Howe, Solicitor,* and *Robert B. Wallace,* of Charleston, *for Respondent,*

June 12, 1967.

BUSSEY, Justice.

Appellant, Jacob Jenkins, was convicted of reckless homicide at the January, 1963, term of the Court of General Sessions for Charleston County. This appeal reaches this court somewhat belatedly due to difficulty in obtaining a transcript of the trial as a result of the official court reporter having left the state.

There are numerous grounds of appeal, including the contention that appellant was entitled to a directed verdict, or to have the verdict set aside for insufficiency of evidence to support the conviction. It is well settled that on appeal from a refusal to direct a verdict of not guilty, the evidence and inferences that may be reasonably drawn therefrom have to be viewed in the light most favorable to the State, and if there is any competent evi-

dence supporting the verdict, such will not be set aside. See cases collected in West's South Carolina Digest, Criminal Law, Key No. 1144(13) and 1159.

We proceed to state the evidence, and the inferences reasonably deducible therefrom, in the light of the foregoing principles. On Sunday, September 2, 1962, at about 1:30 P. M., a nine year old boy, Paul Wasdin, was instantly killed when struck by an automobile driven by the appellant on River Road on John's Island, a rural area of Charleston County. River Road is a part of the secondary highway system, located entirely on John's Island. It is paved, twenty feet in width, and at the point of the fatal accident runs in a somewhat northwesterly and southeasterly direction, but, for convenience, we shall refer to it as running north and south.

Paul Wasdin lived with his family on the west side of the road at a point just north of the intersection of the Seaboard Railroad with the highway. The appellant lived on another John's Island road which intersects the River Road approximately one and a half miles north of the Wasdin home, the total distance from the appellant's home to the Wasdin home being approximately two and a half miles. Mrs. Frances Blair, a witness for the State, lived on River Road approximately one mile south of the Wasdin home.

Shortly before the accident appellant passed the home of Mrs. Blair and the Wasdin home traveling in a northerly direction on River Road. At that time he was alone in the car and driving at a high rate of speed in the middle of the highway, his speed being estimated by witnesses as high as eighty miles per hour. The interval of time which elapsed between his first being seen by the witnesses and the accident is not precisely fixed, but it is inferable that such was approximately fifteen minutes. Appellant went to his home, picked up five passengers, returned to River Road and was driving south when the accident occurred.

A short time before the accident Paul Wasdin and his sister, Linda, age 12, rode their respective bicycles a short distance in a northerly direction on River Road, turned around and headed back home. As they neared the Wasdin driveway, traveling in a southerly direction, Linda was riding within a foot or so of her right hand edge of the pavement, and Paul was riding a foot or so to her left. Linda looked back, saw appellant's car approaching from the rear, and proceeded to get off the pavement to her right, at the same time calling to Paul to get off. There was no other traffic in the vicinity and Paul proceeded to the left side of the highway to leave the right lane for the passage of appellant's car and had almost gotten to the left edge of the pavement and straightened out when he was struck by appellant's car. The road to the north of the scene was straight for a distance of eight-tenths of a mile, giving appellant a clear and unobstructed view of the bicyclists for that distance, but he did not sound his horn on approaching.

Physical evidence indicated the point of impact to be well to appellant's left or the east side of the pavement, and that appellant's car skidded approximately ninety-two feet before impact. Paul's bicycle was demolished and the parts scattered over a considerable distance. Paul himself was dragged or carried more than two hundred feet. Appellant's car traveled a total distance after impact of approximately two hundred forty feet. Beyond the point of impact it skidded some distance, still on the pavement, and then left the pavement with its left wheels going in the ditch to the east side of the highway. From the point where the wheels entered the ditch to the stopping point, the shoulder of the road was torn up by the underpart of the car. It sheared off a sizeable section of the bank of an intersecting field ditch, and finally came to rest against a culvert underneath an intersecting field road adjacent to the railroad track, the car itself being practically demolished.

Paul's mother heard the crash and upon looking out saw appellant's car still "going down in that ditch just aflying". The first investigating officer to arrive

at the scene testified that appellant had a faint odor of alcohol on him, that his eyes were glassy, his pupils enlarged, and that appellant twice dropped his driver's license. Another officer testified that appellant was glassy-eyed and appeared to have been drinking. The applicable speed limit at the location was 45 miles per hour. The physical evidence alone would clearly warrant the inference that appellant was not only driving in excess of the speed limit, but at an extremely high rate of speed. He was approaching not only a railroad crossing, but a special hazard, children on bicycles in plain view. He did not sound his horn or reduce his speed. The foregoing was quite sufficient, we think, to show that the appellant was driving his vehicle in reckless disregard of the safety of others and that the verdict of the jury was amply supported by the evidence.

By a number of exceptions appellant alleges errors in the admission of evidence. It is contended that the trial judge should have excluded from evidence testimony of investigating officers as to the damaged condition of appellant's car; the appearance of the appellant after the collision with respect to whether he was or was not drinking, and certain measurements made by one of the officers in conjunction with other officers at the scene. It is also urged that the admission of the parts of the demolished bicycle was error. No sound reason is urged, or applicable authority cited, in support of the contention that the mentioned testimony of the several officers should have been excluded. There was nothing inflammatory about the bicycle parts and they were relevant not only on the issue of speed but in establishing the approximate point of impact. One end of the handlebar still had in it material which evidently came from a gouged out area in the pavement.

Appellant contends that the trial court erred in admitting over objection the testimony of three witnesses as to the manner of driving and the rate of speed on the part of the appellant when he was traveling north toward his home approximately fifteen minutes prior

to the accident. It is contended that such was too remote in point of time to be relevant and that its admission was prejudicial. Since heedlessness or willfulness is an essential element of the offense charged, it is urged by the State that the evidence was properly admitted as tending to show the state of mind of the appellant at a time very near to the accident. In support of its contention, the State cites an annotation in 46 A. L. R. (2d), page 14, wherein it is said,

"In cases where recklessness, wantonness, or wilfulness is in issue it is frequently necessary, or desirable in order to establish a strong case, to show not only an indifference to consequences at the instant the accident occurred, but also a state of mind, such as heedlessness or willfulness, that persisted at least several minutes prior to the accident. Where such a mental attitude is important in a case, the court may well admit testimony concerning the manner of driving a substantial time before or distance from the accident. Likewise, where it is charged that one of the parties was drunk or was under the influence of intoxicating liquor at the time an accident occurred, the court may admit testimony as to the manner in which such party was driving his vehicle a substantial distance from the place of the accident, for the purpose of substantiating the charge."

Appellant cites no authority which is in point, in support of his contention that this evidence was inadmissible, and we are inclined to agree, under all the circumstances reflected by the record, that the evidence was not too remote, in point of time, to be relevant as going to show the condition and mental attitude of appellant at the time of the accident itself. Aside from any question as to its admissibility, counsel for appellant cross examined each of the witnesses thereabout, without reserving any objections previously made, and such objections were thereby lost and the error, if any, cured. See cases collected in West's South Carolina Digest, Criminal Law, Key No. 899.

Appellant contends that he is entitled to a new trial because the solicitor in the course of jury argument misquoted the testimony of Linda Wasdin. This con-

tention is clearly without merit. A review of the testimony of Linda Wasdin and the solicitor's remarks thereabout show that, in fact, there was no misquotation on his part.

The only other exception on the part of the appellant is as follows,

"TENTH: That His Honor erred in denying Appellant's request for charges Numbers seven (7), thirteen (13), fourteen (14) and fifteen (15)."

It is obvious that the quoted exception is not in compliance with Supreme Court Rule 4, Section 6. Aside from the exception not being proper, the requested instructions are not included in the transcript of record and, hence, there is nothing for this court to review even if the exception were a proper one.

All of appellant's exceptions being without merit, the judgment of the lower court is, accordingly,

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.