638 S.E.2d 96

Margaret O'LEARY–PAYNE, Respondent,

v.

R.R. HILTON HEAD, II, INC. and Charter
Oak Group, Ltd., Appellants.

No. 4173.

Court of Appeals of South Carolina.

Heard Sept. 27, 2006.

Decided Oct. 30, 2006.

Rehearing Denied Dec. 15, 2006.

342

Charles E. Carpenter, Jr., and Carmen V. Ganjehsani, both of Columbia and Thomas C. Cofield, of Lexington, for Appellants.

Daniel R. Denton, of Beaufort, David H. Berry, of Hilton Head Island and Henry E. Grimball, of Charleston, for Respondent.

HEARN, C.J.:

In this negligence action, R.R. Hilton Head, II, Inc. and Charter Oak Group, Ltd., (collectively Charter) appeal (1) the trial court's denial of their motion for a directed verdict; (2) the trial court's decision to strike the defense of assumption of the risk; and (3) the trial court's refusal to allow them to argue third party liability in their closing argument. We affirm.

## FACTS

Margaret O'Leary–Payne was a manager at Lillian Vernon, a retail store located in the Hilton Head Factory Stores II (Shopping Center).[1] Her duties included breaking down cardboard boxes and transporting them outside to the trash compactor. Lillian Vernon required its employees to remove all trash before the close of the day because it received new shipments early in the morning.

Around dusk on the evening of April 2, 1998, O'Leary–Payne stacked several broken down cardboard boxes up to her

---

1. Lillian Vernon leased its store from the owner of the Shopping Center, R.R. Hilton Head, II. The lease stated that R.R. Hilton Head, II was responsible for the management and maintenance of the common areas of the Shopping Center, including the sidewalks. Charter Oak Group was the management company for the Shopping Center. Charter Oak Group and R.R. Hilton Head, II performed inspections to ensure that the sidewalks were clear of debris and to detect any hazards. For simplicity's sake, both the owner and management company will be referred to as Charter.

waist on a cart. She then proceeded out the back door onto the sidewalk, which she had traversed numerous times before, to take the boxes to the trash compactor and dumpster provided by Shopping Center. Although the sidewalk was lit, it was still quite dim. As O'Leary–Payne was walking down the sidewalk, something caught her foot and she fell backwards. Once she was on the ground, O'Leary–Payne noticed, for the first time, a metal pipe [2] protruding approximately five-and-a-half inches from the sidewalk. As a result of the fall, her foot was bleeding and her shoe was torn. She returned to the store, placed a bandage on the cut, and asked her assistant manager to return with her outside to look at the rod.

The next morning, O'Leary–Payne reported her fall to the manager's office at the Shopping Center. The accident report stated that O'Leary–Payne "tripped over a pipe sticking out [of the] sidewalk." She and the manager then went to the scene of the accident. They observed that no warnings were in place to call attention to the rod.

On May 22, 1998, O'Leary–Payne visited a doctor for problems arising from her fall. In addition to the cut on her foot, she complained of neck and lower back pain and headaches. Immediately after the fall, she had experienced pain in her lower spine and buttocks. After the accident, some of her injuries improved but others worsened. Specifically, she continued to have problems with a vein, and eventually had to strap her right arm to her body because she lost all feeling in the arm. She also was taking several pain medications and using a pain pump.

On January 22, 2001, O'Leary–Payne instituted an action for negligence against Charter. At trial, O'Leary–Payne sought to exclude any evidence of the liability of third parties.[3] The trial court agreed, ruling Charter could not introduce any

---

**2.** Eventually, she discovered the pipe was a grounding rod. The rod was located approximately seventeen inches from the wall.

**3.** Charter initiated an action against the third parties after O'Leary–Payne brought the action under appeal. In its action, Charter alleged these parties were responsible for O'Leary–Payne's injuries. The third parties included the general contractor, the electrical subcontractor, and a subcontractor of the electrical subcontractor who actually installed the electrical systems and the grounding rod. Upon motion of the third parties, Charter's action was severed from the current action.

evidence of third party liability unless O'Leary–Payne opened the door. During O'Leary–Payne's presentation of a video deposition, a discussion arose between the trial court and the attorneys regarding third party liability. O'Leary–Payne was "willing to let [the jury] know there were other attorneys involved and who they represented." The trial court responded, "So you're going to let [Charter's attorney] open the door as far as anything of blaming other people for this situation?" O'Leary–Payne responded, "If he wants to blame the other people in the case ... he can blame them." The trial court then asked Charter if it wanted the trial court "to let the jury know anything about who these people are, that this is another case going on somewhere else or another forum at another time?" Charter responded that it did not want the trial court to inform the jury about the other parties; it wished to let the video deposition play, and it would say "who [the other attorneys] represent." Charter maintained "it certainly opens my door to talk about the blame of these other people."

Trial proceeded with no further mention of the third parties until the trial court began ruling on motions prior to closing arguments. O'Leary–Payne made a motion to strike Charter's defense of superseding and intervening negligence of other parties. The trial court stated the record contained no evidence of third party liability, but Charter argued that because O'Leary–Payne stipulated that Charter could blame other parties, Charter did not need to present any evidence of the third parties' liability. The trial court responded that "the stipulation was that you could blame, but you didn't blame." The trial court ruled Charter could only argue evidence in the record, and because no evidence had been presented as to who constructed the sidewalk, Charter could not mention third party liability in its closing argument.

At the close of O'Leary–Payne's case, Charter moved for a directed verdict. Charter argued O'Leary–Payne failed to satisfy her burden of proof because she presented no evidence that a hazardous, dangerous, or defective condition existed or that Charter had notice of a defective condition. Upon questioning from the trial court regarding why O'Leary–Payne did not present expert testimony, she answered she was not required to present expert testimony to show a hazard existed because a lay person could determine the rod was hazardous

from looking at the photograph. Charter further argued that O'Leary–Payne was improperly attempting to use the doctrine of *res ipsa loquitur* to meet her burden. The trial court denied the directed verdict motion. At the close of its case, Charter renewed its motion, which the trial court again denied.

O'Leary–Payne also made a motion to strike Charter's assumption of the risk defense. Charter argued that she assumed the risk by going out on the sidewalk when she knew the lighting was poor and with the boxes stacked high enough to impair her line of sight. Charter argued that she should have waited until the following morning to take the boxes to the dumpster. The trial court granted the motion to strike the defense.

The jury awarded O'Leary–Payne actual damages of $5,981,690, but found O'Leary–Payne was forty percent negligent and thereby reduced the verdict to $3,589,014.[4] Charter moved for a judgment notwithstanding the verdict (JNOV) and a new trial, both of which the trial court denied. This appeal followed.

## LAW/ANALYSIS

### I. Directed Verdict

Charter argues the trial court erred by failing to grant its motion for a directed verdict on several grounds. Charter maintains (1) O'Leary–Payne relied on the doctrine of *res ipsa loquitur* and did not present any evidence that Charter created the dangerous condition, and (2) the rod was an open and obvious defect. We disagree.

When ruling on a directed verdict motion, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *Sabb v. S.C. State Univ.*, 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002). This court must follow the same standard. *Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995). "If more than one reasonable inference can be drawn or if the inferences to be

---

4. No issue was raised on appeal concerning the amount of the verdict.

drawn from the evidence are in doubt, the case should be submitted to the jury." *Chaney v. Burgess,* 246 S.C. 261, 266, 143 S.E.2d 521, 523 (1965). This court will only reverse the trial court when no evidence supports its ruling. *Steinke v. S.C. Dep't of Labor, Licensing, & Regulation,* 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999).

According to South Carolina law, "[o]ne who operates a shopping center where stores are leased to merchants and the owner retains possession and control of the parking area and sidewalks, is not an insurer of the safety of those who use the parking lot and sidewalks as customers of the merchants leasing the stores...." *Bruno v. Pendleton Realty Co.,* 240 S.C. 46, 50-51, 124 S.E.2d 580, 582 (1962). However, "the owner of the premises owes the customers the duty of exercising ordinary care to keep the passageways, sidewalks and such other parts of the premises as are ordinarily used by the customers in transacting business in a reasonably safe condition." *Id.* at 51, 124 S.E.2d at 582.

## A. *Res Ipsa Loquitur*

Charter argues the trial court erred in failing to grant its directed verdict motion because O'Leary–Payne relied on the doctrine of *res ipsa loquitur.* We disagree.

*Res ipsa loquitur* means "the thing speaks for itself." W. Page Keeton et al., *Prosser and Keeton on Torts* § 39, at 243 (5th ed. 1984). According to the doctrine of *res ipsa loquitur:*

> There must be reasonable evidence of negligence; but where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from lack of care.

*Id.* at 244.

Charter mischaracterizes O'Leary–Payne's argument as being "the rod speaks for itself." O'Leary–Payne did not attempt to prove Charter's negligence by asserting that simply because she was injured at Charter's Shopping Center, Char-

ter was therefore negligent. Instead, she attempted to prove negligence by introducing details about the rod, such as its height and location, from pictures and testimony. Accordingly, we find the trial court did not err in failing to grant Charter a directed verdict on the grounds that O'Leary–Payne relied on *res ipsa loquitur* to prove negligence.

## B. Creation of a Defective Condition

Charter next argues the trial court erred in denying its motion for a directed verdict because O'Leary–Payne presented no evidence that Charter created a dangerous or defective condition. We disagree.

■ To recover damages for injuries caused by a dangerous or defective condition on a storekeeper's premises, the plaintiff must show either (1) that the injury was caused by a specific act of the defendant which created the dangerous condition; or (2) that the defendant had actual or constructive knowledge of the dangerous condition and failed to remedy it. *Wintersteen v. Food Lion, Inc.*, 344 S.C. 32, 35, 542 S.E.2d 728, 729 (2001).

First, Charter maintains O'Leary–Payne presented no evidence the rod constituted a dangerous or defective condition because she did not have an expert testify the rod was a hazard nor did she demonstrate the rod was improperly placed or installed. We find this argument unavailing.

■ "[E]xpert testimony is not necessary to prove negligence or causation so long as lay persons possess the knowledge and skill to determine the matter at issue." F. Patrick Hubbard & Robert L. Felix, *The Law of South Carolina Torts* 167 (2d ed. 1997). Expert testimony is not required to prove proximate cause if the common knowledge or experience of a layperson is extensive enough. *Bramlette v. Charter–Med.– Columbia*, 302 S.C. 68, 72–73, 393 S.E.2d 914, 916 (1990).

■ Here, O'Leary–Payne was not required to provide expert testimony that the rod created a dangerous or defective condition. A lay person could determine the rod was a hazard from the pictures of it and testimony about its height and position. Accordingly, we find Charter was not entitled to a directed verdict on the grounds O'Leary–Payne did not use an expert to establish the rod was a hazard.

Next, Charter claims O'Leary–Payne did not present evidence that Charter knew a dangerous or defective condition existed and failed to remedy it.[5] We disagree.

■■■■■ Constructive notice is a legal inference which substitutes for actual notice. It is notice imputed to a person whose knowledge of facts is sufficient to put him on inquiry; if these facts were pursued with due diligence, they would lead to other undisclosed facts. *Strother v. Lexington County Recreation Com'n*, 332 S.C. 54, 64, 504 S.E.2d 117, 122 (1998). During trial, Charter admitted O'Leary–Payne had established some evidence of constructive notice of the rod. Further, Charter had adopted a procedure that required its employees to conduct regular inspections of all sidewalks to ensure they were in a safe condition. Therefore, because Charter should have observed the rod during an inspection, it had constructive notice of the rod, and the trial court properly denied its motion for a directed verdict on this ground.

## C. Open and Obvious Defect

■■■■ Charter also claims the trial court erred in not granting its directed verdict motion because the rod was an open and obvious defect, and O'Leary–Payne failed to present any evidence suggesting Charter could have anticipated any harm would arise from it. This argument is not preserved for appellate review because Charter did not raise it to the trial court at the time it requested a directed verdict. *See, e.g., Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) (holding that an issue not raised to or ruled upon by the trial judge is not preserved for appellate review); *Lucas v. Rawl Family Ltd. P'ship*, 359 S.C. 505, 510–11, 598 S.E.2d 712, 715 (2004).

## II. Assumption of Risk

Charter claims the trial court erred in striking its assumption of the risk defense. We disagree.

■■■■ "Assumption of the risk is the deliberate and voluntary choice to assume a known risk." *Baxley v. Rosenblum*,

---

**5.** Whether Charter had actual notice of the grounding rod is not an issue in this appeal as both Charter and O'Leary–Payne maintained they never noticed the rod at any point prior to the accident.

303 S.C. 340, 347, 400 S.E.2d 502, 507 (Ct.App.1991). The doctrine of assumption of the risk embodies the principle that plaintiffs may not recover for injuries received when they voluntarily expose themselves to a known and appreciated danger. *Lowrimore v. Fast Fare Stores, Inc.*, 299 S.C. 418, 424, 385 S.E.2d 218, 221 (Ct.App.1989).

 The supreme court abolished assumption of the risk as a bar to absolute recovery in *Davenport v. Cotton Hope Plantation Horizontal Prop. Regime*, 333 S.C. 71, 87–88, 508 S.E.2d 565, 574 (1998). The court, however, limited its ruling to apply to causes of action arising or accruing after November 9, 1998. *Id.* O'Leary–Payne's cause of action accrued against Charter on April 2, 1998. Therefore, on appeal, Charter correctly argues that assumption of the risk could act as a complete bar to O'Leary–Payne's cause of action because it arose before the effective date of *Davenport*.

At trial, however, Charter never mentioned the effective date of the *Davenport* decision nor argued assumption of risk was a complete bar to the action. In fact, in response to the trial court's question as to whether assumption of the risk has been subsumed within comparative negligence, Charter stated: "It is, but still, the law of assumption of risk, even though it's incorporated within comparative, we're still entitled to a charge of that defense, because it's still a viable defense, **it's just not an outright defense.**" (emphasis added). Later in the colloquy the trial court provided Charter a second, and final, opportunity to address the assumption of the risk issue, and again Charter failed to argue any issues relating to the effective date of *Davenport* or that assumption of the risk would be a complete bar to O'Leary–Payne's action.

 Accordingly, the argument that assumption of risk is a complete bar to O'Leary–Payne's action is not preserved for our review because it was neither raised to nor ruled upon by the trial court. *See Staubes*, 339 S.C. at 412, 529 S.E.2d at 546 (holding that an issue not raised to or ruled upon by the trial judge is not preserved for appellate review).

### III. Closing Arguments

Finally, Charter argues the trial court erred by prohibiting it from raising third party liability in its closing argument

after O'Leary–Payne stipulated it could blame third parties. We disagree.

Closing arguments must be confined to evidence in the record and reasonable inferences therefrom. *State v. Huggins*, 325 S.C. 103, 107, 481 S.E.2d 114, 116 (1997). A trial court is allowed broad discretion in dealing with the range and propriety of closing argument to the jury. *State v. Condrey*, 349 S.C. 184, 195–96, 562 S.E.2d 320, 325 (Ct.App.2002). Ordinarily, the trial court's rulings on such matters will not be disturbed. *State v. Patterson*, 324 S.C. 5, 17, 482 S.E.2d 760, 766 (1997); *see also State v. Copeland*, 321 S.C. 318, 324, 468 S.E.2d 620, 624 (1996) ("The trial court's discretion will not be overturned absent a showing of an abuse of discretion amounting to an error of law that prejudices the defendant."). An appellate court must review the argument in the context of the entire record. *Patterson*, 324 S.C. at 17, 482 S.E.2d at 766.

Neither Charter nor O'Leary–Payne presented any evidence of third party liability. Charter argues O'Leary–Payne's statement that it could blame third parties rose to the level of a stipulation thereby entitling it to argue third party liability to the jury. While this is admittedly a close issue, we defer to the trial court's judgment regarding the scope of the alleged stipulation. The alleged stipulation occurred early in O'Leary–Payne's case, before O'Leary–Payne even testified. Therefore, Charter had ample opportunity to present evidence of third party liability, but it did not take advantage of that opportunity. We also note that Charter declined the trial court's offer to advise the jury as to the identity of the third parties and the existence of the other lawsuit. Absent testimony on this issue or the trial court's communication of the stipulation to the jury, the matter of third party liability was not in evidence. Therefore, the trial court correctly refused to allow Charter to blame third parties during closing argument.

## CONCLUSION

Based on the foregoing, the order of the trial court is hereby

**AFFIRMED.**

GOOLSBY and WILLIAMS, JJ., concur.