658 S.E.2d 94

The STATE, Respondent,

v.

Stephen Christopher STANKO, Appellant.

No. 26442.

Supreme Court of South Carolina.

Heard Sept. 20, 2007.

Decided Feb. 25, 2008.

Rehearing Denied March 19, 2008.

572

Chief Appellate Defender Joseph L. Savitz, III, and Appellate Defender Katherine H. Hudgins, both of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General J. Anthony Mabry, all of Columbia, and Solicitor John Gregory Hembree, of Conway, for Respondent.

Chief Justice TOAL:

A jury convicted Appellant Steven C. Stanko of murder, assault and battery with intent to kill, criminal sexual conduct, two counts of kidnapping, and armed robbery and recommended Appellant be sentenced to death. In his appeal, Appellant raises issues regarding 1) the limitation of the scope of *voir dire* and 2) the omission of a statutory mitigating factor from the jury charges in the penalty phase. We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

This case arises out of two brutal attacks in a string of violent crimes committed in Georgetown County. The State alleged Appellant strangled his girlfriend and attempted to murder her daughter by slitting her throat in the course of a robbery and sexual assault of the two women. At trial, Appellant did not deny committing the crimes, but alleged that he was insane.

During *voir dire,* Appellant attempted to question a potential juror as to her views on the insanity defense. The State immediately objected to this line of questioning. The trial judge sustained the objection and ruled that Appellant could ask potential jurors whether they could consider affirmative defenses "and list them all," but could not ask jurors whether they would consider the specific affirmative defense of insanity. After the parties discussed the issue, Appellant indicated he was "abandoning" asking potential jurors questions specifically regarding the insanity defense.

After the State presented its case in chief, Appellant presented expert witnesses in order to prove his insanity defense. The experts testified that medical examinations of Appellant's brain revealed a frontal lobe abnormality. Three of Appellant's experts testified that the frontal lobe abnormality impaired his ability to control his impulses and exercise proper judgment. One of Appellant's experts testified that he was unable to distinguish between right and wrong as required under South Carolina law. *See State v. Pittman,* 373 S.C. 527, 577–78, 647 S.E.2d 144, 170 (2007) (a defendant is considered legally insane if, at the time of the offense, he lacked the capacity to distinguish moral or legal right from wrong). In rebuttal, the State presented experts who testified that Appellant was able to distinguish between right and wrong and, therefore, could be held criminally responsible for his actions. The trial court submitted a jury charge on the insanity defense and instructed the jury that, in order to be found not guilty by reason of insanity, Appellant had to show by a preponderance of the evidence that he had a mental disease or defect that made him unable to distinguish right from wrong. *See S.C.* Code Ann. § 17–24–10 (2006). At the conclusion of the guilt phase, the jury declined to find Appellant not guilty by reason of insanity and returned a guilty verdict as to all counts.

The trial proceeded to the penalty phase, and during the conference to determine the appropriate jury charges, the trial court informed the parties that it intended to charge the jury on two statutory mitigating factors provided in S.C.Code Ann. §§ 16–3–20(C)(b)(2) and (6).[1] Appellant did not request a

---

1. These mitigating factors provide: "The murder was committed while the defendant was under the influence of mental or emotional distur-

charge on any additional statutory mitigating factors and indicated that he had no objection to the jury charges.

At the conclusion of the penalty phase, the jury recommended Appellant be sentenced to death. This appeal followed, and Appellant raises the following issues for review:

I. Did the trial court err in refusing to allow Appellant to ask potential jurors about their feelings and viewpoints concerning the defense of insanity during *voir dire* ?

II. Did the trial court err in failing to instruct the jury on an additional and unrequested statutory mitigating circumstance?

## Law/Analysis

### I. *Voir Dire*

Appellant argues the trial court erred in refusing to allow him to question potential jurors about their feelings on the insanity defense during *voir dire*. We disagree.

Initially, we question whether this issue is preserved for review. After the trial court ruled that Appellant could not ask potential jurors about their views on the insanity defense, Appellant indicated that he was "abandoning" this line of questioning, thereby suggesting he accepted the trial court's ruling. *See State v. George*, 323 S.C. 496, 510, 476 S.E.2d 903, 911 (1996) (no issue is preserved for appellate review if the objecting party accepts the trial courts ruling and does not contemporaneously make an additional objection).

In any event, Appellants argument fails on the merits. The scope of *voir dire* and the manner in which it is conducted are generally left to the sound discretion of the trial court. *State v. Wise*, 359 S.C. 14, 23, 596 S.E.2d 475, 479 (2004). An abuse of discretion occurs when the trial courts ruling is based on an error of law. *State v. McDonald*, 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000). A capital defendants right to voir dire, while grounded in statutory law, is also rooted in the Due Process Clause of the Fourteenth Amend-

---

bance" and "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." S.C.Code Ann. §§ 16–3–20(C)(b)(2) and (6).

ment of the United States Constitution. *Id.* To constitute reversible error, a limitation on questioning must render the trial fundamentally unfair. *Mu'Min v. Virginia,* 500 U.S. 415, 431, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991); *State v. Hill,* 361 S.C. 297, 308, 604 S.E.2d 696, 702 (2004).

Appellant argues that he was deprived of his right to a fair trial by an impartial jury as a result of the trial courts ruling precluding counsel from questioning potential jurors on their view of the insanity defense. Appellant claims the insanity defense is a controversial legal issue and that some members of the jury may have been unable to follow the law in regard to the defense. We disagree.

■■ Appellant was not entitled to ask potential jurors about their specific views of the insanity defense during *voir dire.* The trial court allowed Appellant to explore the issue of affirmative defenses during *voir dire,* and permitting either side to ask any more case-specific questions would have veered close to allowing the parties to stake out a jury. *See State v. Poindexter,* 314 S.C. 490, 493, 431 S.E.2d 254, 255 n. 2 (1993) (*voir dire* is not to be used as a means of pre-educating or indoctrinating a jury or as a means of impaneling a jury with particular predispositions).[2] While the Sixth and Fourteenth Amendments to the United States Constitution provide a defendant with the constitutional right to a fair and impartial jury of his peers, this right does not entitle a defendant to handpick a jury. The Constitution, after all, does not dictate a catechism for *voir dire,* but only that the defendant be afforded an impartial jury. *Morgan v. Illinois,* 504 U.S. 719, 729, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

Our review of the entire *voir dire* process shows the qualified jurors were impartial, unbiased, and capable of following the law. Prior to trial, potential jurors completed a questionnaire indicating whether they were the type of person who:

---

2. We disagree with the dissent that *Poindexter* stands for the proposition that questioning jurors about their bias against the insanity defense is appropriate. Nonetheless, the issue in this case is not whether it is appropriate, but rather, the issue is whether the trial court's ruling precluding such questioning rendered Appellant's trial "fundamentally unfair." *See Hill,* 361 S.C. at 310, 604 S.E.2d at 703 (affirming trial court's ruling that limited *voir dire* questioning where such limitation did not render the defendant's trial fundamentally unfair).

(1) would automatically impose the death penalty; (2) would never impose the death penalty; or (3) would listen to the evidence and apply the law in deciding whether to impose the death penalty. The trial court excused any individual who indicated that he fell into the first or second category. The trial court asked the potential jurors if anyone had bias or prejudice regarding the case and dismissed those who stated they could not remain fair or unbiased. Additionally, the trial court confirmed that each qualified juror would apply the law as charged, even if they disagreed with it, which necessarily includes the law of the insanity defense. Finally, the trial court permitted Appellant to ask potential jurors whether they would be able to apply the law in favor of Appellant if the facts provided for a defense. Appellant presented no evidence showing the limitation of questioning impacted his right to a fair and impartial jury and failed to present evidence that the jury was biased or incapable of following instructions on the law. Accordingly, under the facts of this case, there is no indication that Appellants trial was rendered fundamentally unfair by the trial courts limit of *voir dire*.

In conclusion, contrary to the dissents view, our holding in no way imposes an absolute ban on questioning jurors about their views on the insanity defense. Rather, we hold that the trial courts ruling limiting the scope of *voir dire* did not deprive Appellant of a fair trial.

## II. Mitigating Factor Charge

■ Appellant argues that the trial court erred by failing to instruct the jury on the statutory mitigating circumstance provided in § 16–3–20(C)(b)(7): The age or mentality of the defendant at the time of the crime. We disagree.

■ In *State v. Victor*, 300 S.C. 220, 224, 387 S.E.2d 248, 250 (1989), we set forth the proper procedure for submission of statutory mitigating factors to the jury in the penalty phase of a capital case:

Once the trial judge has made an initial determination of which statutory mitigating circumstances are supported by the evidence, the defendant shall be given an opportunity on the record: (1) to waive the submission of those he does not wish considered by the jury; and (2) to request any addi-

tional mitigating statutory circumstances supported by the evidence that he wishes submitted to the jury.

Absent a request by counsel to charge a mitigating circumstance at trial, the issue of whether the mitigator should have been charged is not preserved for review. *State v. Evans*, 371 S.C. 27, 32, 637 S.E.2d 313, 315 (2006).

In this case, after the trial court informed the parties that it would charge the mitigating factors in §§ 16–3–20(C)(b)(2) and (6), Appellant stated that he had no objection to the decision and did not request that the court charge any additional statutory mitigating factors. Moreover, after charging the jury, Appellant indicated he had no objection to the charge. Accordingly, this issue is not preserved for our review.

 Notwithstanding any preservation issues, we note that Appellant was not prejudiced by the absence of this statutory mitigating factor. Appellants mental condition was the focus of the guilt phase and was also a main issue in the penalty phase. The jury heard extensive expert testimony regarding Appellants alleged mental disorders, and the trial court charged the jury on two other mitigating factors through which they could consider Appellants mental condition. Thus, the jury was clearly aware that they could consider Appellants mentality in determining whether the death sentence was warranted. In spite of this evidence, the jury found the existence of five statutory aggravating factors beyond a reasonable doubt and recommended Appellant be sentenced to death. Therefore, the absence of this statutory mitigating factor did not preclude the jury from considering Appellants mentality in the penalty phase, and there is no reasonable probability that had the trial court charged the jury on this additional mitigating factor, the jury would have returned a different recommendation.[3] *See Jones v. State*, 332 S.C. 329, 339, 504 S.E.2d 822, 827 (1998) (finding no prejudice by the absence of an additional statutory mitigating factor on mental state where the issue of defendants mental condition was clearly before the jury, the trial court charged several other mitigating factors relating to mental condition, and the jury found the existence of five aggravating factors).

---

3. We do not base our finding of no prejudice on the fact that the jury found the existence of five aggravating factors.

## PROPORTIONALITY REVIEW

██ Pursuant to S.C.Code Ann. § 16-3-25(C) (2003), we have conducted a proportionality review and find the death sentence was not the result of passion, prejudice, or any other arbitrary factor. Furthermore, a review of similar cases illustrates that imposing the death sentence in this case would be neither excessive nor disproportionate in light of the crime and the defendant. *See State v. Evins*, 373 S.C. 404, 645 S.E.2d 904 (2007) (death sentence warranted where defendant was convicted of murder, kidnapping, criminal sexual assault, and grand larceny); *State v. Simmons*, 360 S.C. 33, 599 S.E.2d 448 (2004) (death sentence upheld where jury found aggravating factors of criminal sexual conduct, kidnapping, armed robbery, physical torture, and burglary); *State v. Whipple*, 324 S.C. 43, 476 S.E.2d 683 (1996) (death sentence upheld where defendant was convicted of murder, criminal sexual conduct, armed robbery, and grand larceny of a motor vehicle).

## CONCLUSION

For the foregoing reasons, we affirm Appellants convictions and sentence.

MOORE, WALLER and BEATTY, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES:

I respectfully dissent. In my opinion, a capital defendant who will interpose a diminished capacity or insanity defense is entitled to *voir dire* the jurors whether they entertain any bias against such a defense. In fact, this Court has already recognized the appropriateness of such inquiry. *See State v. Poindexter*, 314 S.C. 490, 431 S.E.2d 254 (1993), footnote 2. The trial judge, of course, must be careful not to allow such questioning to veer into improper "pre-educating or indoctrinating," but I cannot agree with the majority's absolute ban. Moreover, I am not clear what evidence the majority believes was available to appellant to demonstrate either the impact of the denial of his *voir dire* request, or that the jury was in fact biased or incapable of following the instructions. Having been

denied the opportunity to probe potential jurors' bias, I would not require that appellant demonstrate its existence in order to obtain relief.

I agree with the majority that the issue whether the jury should have been charged on the statutory mitigating circumstance found in S.C.Code Ann. § 16–3–20(C)(b)(7) is not preserved for our review and therefore the merits should not be addressed on direct appeal. *State v. Stone,* 376 S.C. 32, 655 S.E.2d 487 (2007). Moreover, since South Carolina is not a "weighing" state, *State v. Simmons,* 360 S.C. 33, 599 S.E.2d 448 (2004), the fact that the jury found five statutory aggravators is simply not relevant to whether appellant was prejudiced by the absence of a single mitigator, and I specifically decline to join that part of the majority's decision which cites this as a fact in support of its decision to affirm the unpreserved issue.

I would reverse appellant's convictions and sentences, and remand for a new trial.