**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Vanessa Blackwell, a/k/a Jacqueline Blackwell, Respondent,

v.

Andrew J. Herring, Individually and as an employee/agent of Marion County Sheriff's Department; and Marion County Sheriff's Department, Defendants,

Of which Marion County Sheriff's Department is the Appellant.

Appellate Case No. 2017-000210

Appeal From Marion County
Thomas A. Russo, Circuit Court Judge

Unpublished Opinion No. 2019-UP-101
Heard December 5, 2018 – Filed March 6, 2019

**AFFIRMED**

Douglas Charles Baxter, of Richardson Plowden & Robinson, of Myrtle Beach, and Carmen Vaughn Ganjehsani, of Richardson Plowden & Robinson, of Columbia, both for Appellant.

Eric Marc Poulin and Roy T. Willey, IV, of Charleston, both for Respondent.

---

**PER CURIAM:**  On appeal, the Marion County Sheriff's Department (MCSD) argues the circuit court erred by (1) admitting Vanessa Blackwell's medical bills into evidence without requiring a proper foundation, (2) excluding eyewitness testimony that Blackwell was walking in the roadway minutes before MCSD employee Andrew Herring struck her, (3) declining to inquire during voir dire whether any juror had encountered MCSD or held strong opinions about either MCSD or certain law enforcement practices, (4) allowing Blackwell to discuss matters not in evidence and to impermissibly appeal to the passions of the jury during closing argument, and (5) denying MCSD's motion for a new trial absolute. We affirm.

On May 17, 2014, Blackwell was walking home, heading south on U.S. 501, Business Highway, when she was struck by Herring, who was driving home from work in a MCSD vehicle.  The vehicle struck Blackwell in the leg, causing her to fall down.  EMS responded and transported Blackwell to McLeod Regional Medical Center (McLeod), where she underwent surgery to repair her leg. Blackwell remained in the hospital for approximately three-and-a-half weeks. Thereafter, Blackwell underwent physical therapy for several months.

Blackwell brought suit against MCSD and Herring.[1]  Trial began on September 12, 2016, before the Honorable Thomas Russo.  Ultimately, the jury awarded Blackwell $500,000; however, the jury found Blackwell was thirty-five-percent negligent, which reduced the award to $325,000.  Applying the statutory cap of the South Carolina Tort Claims Act, the circuit court entered a judgment of $300,000 against MCSD.[2]

**Foundation for the Medical Bills**

---

[1] The circuit court subsequently dismissed Herring as a defendant, finding he was acting within the course and scope of his official duties as a reserve officer with MCSD at the time of the accident.

[2] S.C. Code Ann. §§ 15-78-10 to -220 (2005 & Supp. 2018).

"The admission of evidence is within the trial court's discretion." *Johnson v. Sam English Grading, Inc.*, 412 S.C. 433, 448, 772 S.E.2d 544, 551 (Ct. App. 2015) (quoting *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.*, 343 S.C. 424, 439, 540 S.E.2d 113, 121 (Ct. App. 2000)). "The court's ruling to admit or exclude evidence will only be reversed if it constitutes an abuse of discretion amounting to an error of law." *Id.* (quoting *R & G Constr.*, 343 S.C. at 439, 540 S.E.2d at 121). "An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support." *Id.* (quoting *Menne v. Keowee Key Prop. Owners' Ass'n, Inc.*, 368 S.C. 557, 568, 629 S.E.2d 690, 696 (Ct. App. 2006)).

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a), SCRE. "By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule: (1) *Testimony of Witness with Knowledge*. Testimony that a matter is what it is claimed to be." Rule 901(b)(1), SCRE. "'[T]he burden to authenticate . . . is not high' and requires only that the proponent 'offer[ ] a satisfactory foundation from which the jury could reasonably find that the evidence is authentic.'" *Deep Keel, LLC v. Atl. Private Equity Grp., LLC*, 413 S.C. 58, 64, 773 S.E.2d 607, 610 (Ct. App. 2015) (quoting *United States v. Hassan*, 742 F.3d 104, 133 (4th. Cir. 2014)).

We find the circuit court did not abuse its discretion in finding Blackwell's sister, Wendy Arthur, provided a sufficient foundation for Blackwell's medical bills because Arthur properly identified the medical bills during her testimony. *See* Rule 901(b)(1), SCRE (providing evidence may be authenticated by "[t]estimony that a matter is what it is claimed to be"). Arthur testified she was responsible for Blackwell's finances and for transporting her to doctor's appointments.[3] Under the facts and posture of this case, we find Arthur's testimony that she was Blackwell's caregiver and was familiar with Blackwell's medical care provided a "satisfactory foundation from which the jury could reasonably find" that the medical bills were

---

[3] Blackwell was diagnosed with schizophrenia in the early 1990s. Blackwell lives with Arthur, and Arthur has taken care of her since the death of their grandmother in the early 1990s.

"what they were claimed to be." *See Deep Keel*, 413 S.C. at 64, 773 S.E.2d at 610 (quoting *Hassan*, 742 F.3d at 133).[4]

Moreover, we find meritless MCSD's argument that Arthur lacked the ability to lay a foundation as to the reasonableness and necessity of the medical bills because MCSD did not present any evidence that any portion of the medical bills—other than perhaps a single potassium shot for vitamin deficiency—were not properly attributable to the accident. *Contra Carlyle v. Tuomey Hosp.*, 305 S.C. 187, 190, 407 S.E.2d 630, 631 (1991) (holding the circuit court erred in admitting the decedent's medical bills because the total bill did not provide apportionment of the costs for the reconstruction surgery at issue versus treatment for a preexisting condition, and surgeon's testimony that sixty to seventy-percent of decedent's care was devoted to the reconstruction was insufficient to allow the jury to apportion damages). In fact, despite the circuit court's statement that MCSD could cross-examine the witnesses about the reasonableness and necessity of the medical bills, MCSD did not cross-examine either Arthur or Blackwell about the treatment or bills. We acknowledge that the medical reports contained in Plaintiff's Exhibit 6 seem to indicate Blackwell suffered from malnutrition prior to her admission to McLeod. A medical report prepared by Dr. Eric Kerley on May 18, 2014, indicated Blackwell suffered from "significant malnutrition" and that she had low potassium. Yet, the only charge that appears to have been attributable to the malnutrition was a single potassium shot. Therefore, we find the circuit court did not abuse its discretion in allowing the medical bills to be admitted through Arthur.

**Eyewitness Testimony**

"The trial court has wide discretion in determining the relevancy of evidence." *Johnson*, 412 S.C. at 448, 772 S.E.2d at 552. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. "Evidence which is not relevant is not admissible." Rule 402, SCRE.

---

[4] No hearsay objection was made with respect to the admission of Blackwell's medical bills. *See* Rule 803(6), SCRE (providing for the business records exception to the hearsay rule and noting the requirement of a records custodian or "other qualified witness"). Although the parties stipulated as to the admission of Blackwell's medical records, the record provided to the court does not include the specifics of this stipulation.

Pretrial, Blackwell moved to exclude Rhiannon Herring's testimony that she observed Blackwell walking in the roadway minutes before the accident occurred. Blackwell argued Rhiannon's testimony that Blackwell was in the roadway five or ten minutes before the accident had no probative value as to whether Blackwell was in the road when the accident actually occurred. The circuit court stated that as long as Blackwell did not open the door by testifying she was never in the road on the night of the accident, Rhiannon's testimony was irrelevant, and the court would "cross that bridge when we get to it."

MCSD then proffered Rhiannon's testimony. Rhiannon stated she had worked for MCSD for thirteen years and was working for MCSD on the day of the accident. At the time of the accident, she was married to Herring; they have since divorced. Both she and Herring worked at the Foxtrot Festival on the day of the accident; however, they drove separately. Rhiannon testified that on her way home, she observed a black female walking in the roadway on Highway 501 leaving Marion, with her back to traffic. About five to ten minutes later, after Rhiannon arrived home, she received a call from Herring reporting he had been in an accident. Rhiannon testified she went to the scene and learned Herring had struck a black female. Rhiannon admitted she did not witness the accident, and she did not know how long after she saw Blackwell that the accident occurred.

Ultimately, the circuit court excluded Rhiannon's testimony, finding it was irrelevant to whether Blackwell was in the road at the time of the accident and that its prejudicial effect substantially outweighed any probative value. The circuit court found the probative value was vague, ambiguous, and "extremely weak" as to either Herring or Blackwell's conduct.

We find the circuit court did not abuse its discretion in excluding Rhiannon's testimony because it did not make it any more or less probable that Blackwell was walking in the road when Herring struck her. MCSD cites *State v. Jenkins*, 249 S.C. 570, 155 S.E.2d 624 (1967), *DeLee v. Knight*, 266 S.C. 103, 221 S.E.2d 844 (1975), and *State v. Nathari*, 303 S.C. 188, 399 S.E.2d 597 (Ct. App. 1990), in support of its argument that Rhiannon's testimony was admissible because it was relevant to show Blackwell was walking in the roadway minutes before the accident. However, in each of those cases, the appellate court found evidence of the defendant's manner of driving minutes before an accident was admissible to show the defendant's mental state or intoxication, which related to an essential element of the crimes for which the various defendants were charged. *See DeLee*, 266 S.C. at 107, 221 S.E.2d at 845 (holding testimony of two eyewitnesses describing criminal defendant's manner of driving and excessive speed before the

accident was relevant because he was charged with involuntary manslaughter, which required a finding of criminal negligence, and the testimony "tended to prove [his] conscious indifference to the safety of the occupants of the bus"); *Jenkins*, 249 S.C. at 576, 155 S.E.2d at 627 (holding evidence of the defendant's manner of driving and rate of speed fifteen minutes before the accident was relevant to  show his "condition and mental attitude" at the time of the accident when "heedlessness or willfulness" was an essential element of reckless homicide); *Nathari*, 303 S.C. at 194, 399 S.E.2d at 601 (holding testimony by several witnesses about a criminal defendant's conduct and appearance prior to an accident, after which he was charged with driving under the influence, was relevant as "circumstantial evidence from which the jury could infer that [the defendant] was under the influence of alcohol, other drugs, or a combination of the two").  MCSD's reliance on these cases is misplaced because whether Rhiannon witnessed Blackwell walking in the road minutes prior to the accident does not tend to make it more or less probable that she was in the road when Herring struck her.  Therefore, we find the circuit court did not err in excluding Rhiannon's testimony.[5]

**Voir Dire**

"The scope of voir dire and the manner in which it is conducted are generally left to the sound discretion of the trial court." *State v. Bixby*, 388 S.C. 528, 542, 698 S.E.2d 572, 579 (2010) (quoting *State v. Stanko*, 376 S.C. 571, 575, 658 S.E.2d 94, 96 (2008)).  "An abuse of discretion occurs when the trial court[']s ruling is based on an error of law." *Stanko*, 376 S.C. at 575, 658 S.E.2d at 96.  "To constitute reversible error, a limitation on questioning must render the trial fundamentally unfair." *Bixby*, 388 S.C. at 542, 698 S.E.2d at 579 (quoting *Stanko*, 376 S.C. at 576, 658 S.E.2d at 97).

"The responsibility of the trial court is to focus the scope of voir dire examination as described in S.C. Code Ann. § 14-7-1020." *Wilson v. Childs*, 315 S.C. 431, 438, 434 S.E.2d 286, 291 (Ct. App. 1993).  Section 14-7-1020, of the South Carolina Code (2017) provides:

> The court shall, on motion of either party in the suit, examine on oath any person who is called as a juror to know whether he is related to either party, has any

---

[5] We note that despite the exclusion of Rhiannon's testimony, the jury found Blackwell thirty-five-percent comparatively negligent.

interest in the cause, has expressed or formed any opinion, or is sensible of any bias or prejudice therein, and the party objecting to the juror may introduce any other competent evidence in support of the objection. If it appears to the court that the juror is not indifferent in the cause, he must be placed aside as to the trial of that cause and another must be called.

"The manner in which these questions are pursued and the scope of any additional voir dire is within the sound discretion of the trial court. The trial court is not required to ask every question submitted by counsel." *Wilson*, 315 S.C. at 438, 434 S.E.2d at 291 (citations omitted).

"The court may permit the parties or their attorneys to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event, the court shall permit the parties or their attorneys to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions submitted by the parties or their attorneys as it deems proper." Rule 47(a), SCRCP.

Here, we find the circuit court did not abuse its discretion in declining to ask all of MCSD's voir dire questions. *See, e.g.*, *Wilson*, 315 S.C. at 438, 434 S.E.2d at 291 ("The trial court is not required to ask every question submitted by counsel."). Prior to trial, MCSD submitted voir dire requests to the circuit court. At the close of voir dire, the circuit court indicated it had not asked all of MCSD's requested voir dire questions. Specifically, the circuit court did not ask MCSD's requests marked 8 through 12, which were as follows:

> 8. Have you or anyone in your immediate family ever had a dispute with [MCSD]? If yes, then describe the dispute.
>
> 9. Do any of you have strong opinions concerning law enforcement officers (police) operation of their vehicles? If yes, then describe that opinion.
>
> 10. Do any of you have any strong opinions either for or against [MCSD]? If yes, then describe that opinion.

11.  Have any of you or a family member ever been arrested by [MCSD]?

12.  Do any of you regularly walk on the road or shoulder of a road?

Although the circuit court declined to ask these specific questions, it did inquire as to whether any juror knew of any reason he or she could not remain impartial to Blackwell or MCSD.  Therefore, we find the circuit court's limitation on voir dire was not controlled by an error of law.  *See Stanko*, 376 S.C. at 575, 658 S.E.2d at 96 ("An abuse of discretion occurs when the trial court[']s ruling is based on an error of law.").  We do not find the jury's award to have been the result of passion, caprice, or prejudice, as discussed *infra*; MCSD was not prejudiced by the circuit court's refusal to ask all of its questions; nor has MCSD demonstrated that the trial was rendered fundamentally unfair as a result.  *See Bixby*, 388 S.C. at 542, 698 S.E.2d at 579 ("To constitute reversible error, a limitation on [voir dire] must render the trial fundamentally unfair." (quoting *Stanko*, 376 S.C. at 576, 658 S.E.2d at 97)).

**Closing Argument**

"Closing arguments must be confined to evidence in the record and reasonable inferences therefrom."  *O'Leary-Payne v. R.R. Hilton Head, II*, 371 S.C. 340, 352, 638 S.E.2d 96, 102 (Ct. App. 2006).  "A trial court is allowed broad discretion in dealing with the range and propriety of closing argument to the jury."  *Id.*  "An appellate court must review the argument in the context of the entire record."  *Id.*

During the reply closing argument, Blackwell's counsel stated:

> One thing that we do know is that this is the greatest civil justice system in the world that we have because this is probably one of the only countries where little miss somebody like little Ms. Jackie can come in here in front of the twelve of you and go up against with a Marion County reserve sheriff deputy, the guy who as we heard after the wreck was able to call his wife to come out to the scene, his boss to come out to the scene.  He was able to get the favorable highway patrolman who came out to the scene and said after five minutes you're free to go, you're fine.  He was able to get in the medical records,

you know, and EMS thing that, oh, she must have been drunk, even though she wasn't drunk. He's able to do all those things after the wreck and leading up to the trial, but none of that matters now. None of that matters in here because in our civil justice system the twelve of you have the final decision. The twelve of you are the only ones that can help Ms. Jackie get justice in this case. It doesn't matter about all the strings he was able to pull and about all those things he was able to do. The twelve of you get to look at this evidence and you get to decide whether this is gonna be the type of community where people can go around look, driving, looking on their cell phones, running people over, covering it up, and getting away with it[.]

At that point, MCSD objected, stating Blackwell's argument was improper because she was "supposed to address the facts of the case." The circuit court overruled the objection. In its post-trial motion, MCSD argued it was entitled to a new trial because the circuit court allowed Blackwell "to make improper arguments during closing in contradiction to the rulings on the motions in *limine*." In its order denying MCSD's post-trial motions, the circuit court found MCSD did not preserve its argument regarding Blackwell's closing argument because it did not specify which statements it found objectionable. The circuit court further noted that even if MCSD did identify which statements were objectionable, a motion in limine is not a final ruling. On appeal, MCSD argues these "cover up" references were efforts to improperly appeal to the passions and prejudices of the jury.

We find unpreserved MCSD's argument that Blackwell's closing argument improperly appealed to the passions of the jury because this argument was never raised to the circuit court. *See Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 23, 602 S.E.2d 772, 779–80 (2004) ("Issues and arguments are preserved for appellate review only when they are raised to and ruled on by the lower court."); *Stevens & Wilkinson of S.C., Inc. v. City of Columbia*, 409 S.C. 563, 567, 762 S.E.2d 693, 695 (2014) ("[A] party cannot use a Rule 59(e) motion to advance an issue the party could have raised to the circuit court prior to judgment, but did not.").

We note MCSD did object during Blackwell's closing argument and assert Blackwell was "supposed to address the facts of the case." But, the facts alleged in the portion of Blackwell's argument MCSD cites as improper in its brief are found in the evidence: Herring testified his wife and boss responded to the scene;

Trooper Ellis testified he allowed Herring to leave the scene five to six minutes after Trooper Ellis arrived; and although Campbell testified he smelled alcohol on Blackwell's breath and noted it in his report, the hospital report indicated Blackwell's blood alcohol test was negative. Because Blackwell's argument did not exceed the scope of the evidence presented at trial, we find no error. *See O'Leary-Payne*, 371 S.C. at 352, 638 S.E.2d at 102 ("Closing arguments must be confined to evidence in the record and reasonable inferences therefrom.").

**New Trial Absolute**

"A new trial may be granted . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the State. . . ." Rule 59(a)(1), SCRCP. "The grant or denial of new trial motions rests within the discretion of the circuit court, and its decision will not be disturbed on appeal unless its findings are wholly unsupported by the evidence or the conclusions reached are controlled by error of law." *Brinkley v. S.C. Dep't of Corr.*, 386 S.C. 182, 185, 687 S.E.2d 54, 56 (Ct. App. 2009).

> [A]s an appellate court, we sit neither to determine whether we agree with the verdict nor to decide whether we agree with the trial judge's decision not to disturb it. As described above, we employ a highly deferential standard of review when considering the trial judge's ruling on each of the grounds for a new trial. In exercising this deference, we recognize the unique position of the trial judge to hear the evidence firsthand, evaluate the credibility of the witnesses, and assess the impact of the wrongful conduct on the plaintiff in terms of damages.

*Burke v. AnMed Health*, 393 S.C. 48, 57, 710 S.E.2d 84, 89 (Ct. App. 2011).

"A jury's determination of damages is entitled to 'substantial deference.'" *Id.* at 56, 710 S.E.2d at 88. "When considering a motion for a new trial based on the inadequacy or excessiveness of the jury's verdict, the trial court must distinguish between awards that are merely unduly liberal or conservative and awards that are actuated by passion, caprice, or prejudice." *Elam*, 361 S.C. at 27, 602 S.E.2d at 781.

"A circuit court may grant a new trial absolute on the ground that the verdict is excessive or inadequate." *Brinkley*, 386 S.C. at 185, 687 S.E.2d at 56. "However, this power may be exercised only when the verdict 'is shockingly disproportionate to the injuries suffered and thus indicates that passion, caprice, prejudice, or other considerations not reflected by the evidence affected the amount awarded.'" *Burke*, 393 S.C. at 56, 710 S.E.2d at 88 (quoting *Becker v. Wal-Mart Stores, Inc.*, 339 S.C. 629, 635, 529 S.E.2d 758, 761 (2000)).

Here, Blackwell suffered a bilateral, left leg tibia fracture with an open wound, which required surgery to repair. Blackwell remained in the hospital for approximately three-and-a-half weeks, and she underwent physical therapy for several months after being discharged. As a result of her injury and the remaining pain to her leg, Blackwell can no longer walk to town to visit the library, the track, the park, and her friends. Blackwell is a diagnosed schizophrenic, and Arthur testified Blackwell's daily walks helped to relieve her stress and depression. Now, Blackwell can only walk to a store about a four-minute walk from her house, and she spends much more time at home because she must rely on Arthur for transportation.

Blackwell presented evidence of more than $100,000 in medical bills. In fact, her medical bills from her hospitalization at McLeod alone were $100,000. We acknowledge the medical bills, admitted as Plaintiff's Exhibit 6, do not track exactly with the billing summary Blackwell presented at trial. The summary reflects Blackwell's medical bills as follows:

| | |
|---|---|
| McLeod Florence | $100,058 |
| Advanced Medical Associates | $1,704 |
| Carolina's Hospital-Marion | $3,469.92 |
| Florence Radiology | $1,943 |
| Marion County EMS | $875 |
| Medical Anesthesia Consultants, LLC | $2,800 |
| | |
| TOTAL: | $110, 849.92 |

However, the exhibit also contains a document showing $4,678.34 in medical bills from Carolina's Hospital and documents supporting $2,760 from CNRA and $1,232 from McLeod-CBO; the billing summary does not include these figures. It is undisputed that Blackwell presented evidence that she suffered in excess of $100,000 in medical bills as a result of the accident.

We must give substantial deference to the jury's award, and we find nothing in the record indicates the jury's award of $500,000—reduced by $175,000 due to the jury's 35% comparative negligence finding—was the result of passion, caprice, or prejudice. In addition to the evidence set forth in the medicals, Blackwell presented evidence of her pain and suffering following the accident. *See id.* at 56, 710 S.E.2d at 88 ("A jury's determination of damages is entitled to 'substantial deference.'"); *Elam*, 361 S.C. at 27, 602 S.E.2d at 781 ("When considering a motion for a new trial based on the inadequacy or excessiveness of the jury's verdict, the trial court must distinguish between awards that are merely unduly liberal or conservative and awards that are actuated by passion, caprice, or prejudice."). Therefore, we find the circuit court did not err in denying MCSD's motion for a new trial.

**AFFIRMED.**

**KONDUROS, MCDONALD, and HILL, JJ., concur.**