16415

ROWLAND v. HARRIS *ET AL.*
(61 S. E. (2d) 397)

*Messrs. C. M. Edmunds* and *John S. Hoar,* of Sumter, *for Appellants,*

*Messrs. Schwartz and Schwartz,* of Sumter, *for Respondent,*

October 3, 1950.

TAYLOR, Justice.

This appeal stems from an action brought by the respondent, Mrs. Emma C. Rowland, in the Court of Common Pleas for Sumter County against the appellants for damages which she is alleged to have sustained by reason of the appellants' having cut timber from her land in violation of a timber contract executed by her.

Upon trial of the cause before a judge and a jury, a verdict was rendered against the appellants for $1,275.00 and an additional $100.00 against the defendant, W. L. Stokes, who does not appeal. Timely objection to the publication of

the verdict and a motion for a new trial were duly made by appellants' counsel, both of which were overruled.

Appellants' exceptions 1, 2 and 3 pose the question of whether or not a mistrial or a new trial should have been ordered by reason of the jury having been sent back to continue its deliberations after twice having reported that it was unable to agree.

Section 642 of the 1942 Code, titled "Jury failing to agree, course to be pursued", reads: "When a jury, after due and thorough deliberation upon any cause, return into court without having agreed upon a verdict, the court may state anew the evidence, or any part of it, and explain to them anew the law applicable to the case, and may send them out for further deliberation; but if they return a second time without having agreed upon a verdict, they shall not be sent out again without their own consent unless they shall ask from the court some further explanation of the law."

This case was submitted to the jury for their consideration on Friday, January 13, 1950, who, after deliberating some time, returned to the courtroom and inquired of the Presiding Judge whether it was admitted that 1,153 trees had been cut. Counsel advising the Court that no such admission had been made, the Presiding Judge informed the jury that he could not give them further instructions as to the facts on this point, and the jury retired for further deliberations. Some two hours later, they returned and reported that they were unable to agree on a verdict, whereupon the judge further charged them upon the desirability of reaching a verdict if possible and instructed them to return a sealed verdict in the event he should not be present himself and to return to the courtroom the following Monday morning in order to publish the same.

The record discloses that the foreman asked the following question:

"Foreman: May I ask a question, in the event the jury does not agree, we don't bring in a verdict whatever?

"Court: If the jury is unable to agree I will arrange at some time later during the night and you will be given supper later on if you desire."

The jury again retired and all officers and personnel of the Court left the courtroom except the bailiff in charge of the jury who at 7 P. M. provided them with dinner after which they resumed their deliberations. What transpired thereafter is set forth in part in the following affidavit made by the bailiff: "At about 9:30 P. M. the Foreman knocked on the door and advised me that they could not reach a verdict and could not get together and asked me when Mr. Blanding would be back."

The Presiding Judge having left for his home, the jury evidently were seeking Mr. Blanding, the clerk, for the purpose of being dismissed. The entire conversation between the Foreman and the bailiff is not set forth in the record. It is significant, however, that, after reporting to the bailiff that they were unable to agree and the clerk and the Presiding Judge being absent, they returned to the jury room and approximately thirty minutes later brought in a verdict for the respondent. It later developed that the Presiding Judge had instructed the clerk that, in case the jury was unable to agree by 11 P. M., he dismiss them from further consideration of the case, but this was unknown to the jury and it is not unreasonable to assume that the jury understood they were to be confined over the week-end unless they reached a verdict.

It is contended that the bailiff was without authority to receive and report to the Court the second announcement of disagreement and that his affidavit as to what transpired in the absence of the Trial Judge and the Clerk of Court should not be received in the record. The jury was left in the care of this bailiff and told to report to him when they had agreed in order that they might be discharged by him. Being unable to agree, they reported this situation, but the bailiff, having been instructed to discharge them only upon their

reaching a verdict, did not discharge them and they returned to the jury room.

In the case of *State v. Simon,* 126 S. C. 437, 120 S. E. 230, 232, this Court stated: "It was the clear intendment of the statute to give the jury the right to indicate to the court its own view of when time for due and thorough deliberation had elapsed by returning 'a second time without having agreed upon a verdict,' and to make that action decisive of the question if accompanied by any expression of unwillingness to retire for a third time".

It is difficult to perceive how the jury could have done anything further. They reported to the only person available, but he was instructed to discharge them only after they had reached an agreement. We are of the opinion that it was entirely proper for the Court to consider the bailiff's testimony or affidavit as to what transpired and that the facts set forth therein, considered in conjunction with what had transpired prior thereto, were sufficient to require the discharge of the jury from further deliberations under the provisions of Section 642 of the 1942 Code, and failing in this, the Trial Judge should have granted appellants' motion for a new trial.

Respondent moved to strike paragraph four in the answer of the Harris Lumber Company which alleged that, although certain trees below the size permitted under the contract had been cut, they had left sufficient oversize trees to offset any damage done by the undercutting. The Presiding Judge refused this motion and the matter is now before this Court.

We are of the opinion that the leaving of oversize timber on the land cannot furnish the basis of a counterclaim. The grantee, under the timber deed requiring the timber to be cut and removed in a specified time, takes a qualified or a determinable fee in the timber and does not acquire absolute title unless and until such timber has been cut and removed from the premises within the specified time. All of the timber left on the land at the time of

the expiration of the cutting and removal period legally belongs to the land owner by virtue of the timber deed itself. Consequently, the land owner is under no obligation whatever to the timber owner for such trees left on the land. When appellant cut timber which was not covered in the timber deed, he was in the position of having committed trespass and cannot relieve himself of such by showing that he has left other trees which he might have cut. The leaving of the oversize timber is, in effect, being used as the basis of a counterclaim or offset for such damages as had been caused by the cutting of the undersize timber, which is not permissible. See *Ellerbe v. Marion County Lumber Co.*, 99 S. C. 158, 82 S. E. 1049. We are, therefore, of the opinion that appellants' motion to strike paragraph four of the answer of Harris Lumber Company should have been granted.

Appellants' questions III and IV have to do with the sufficiency of the evidence, which we will not discuss in view of the fact that a new trial is to be had.

For the foregoing reasons, the judgment of the Trial Court is reversed and remanded for a new trial with paragraph four being stricken from the answer of the Harris Lumber Company.

Baker, C. J., and Fishburne, Stukes and Oxner, JJ., concur.