1666

The STATE, Respondent v. Ronald S. TILLMAN, Appellant.
(405 S.E. (2d) 607)
Court of Appeals

*Jack B. Swerling* and *Jennifer Kneece Shealy,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Amie L. Clifford,* and *Sol. Richard A. Harpootlian,* Columbia, *for respondent.*

Heard March 18, 1991; Decided May 28, 1991.

Rehearing Denied June 20, 1991.

SHAW, Judge:

Appellant, Ronald S. Tillman, was convicted of murder and sentenced to life imprisonment. We affirm.

The State offered three key witnesses implicating the appellant in the murder of one Donald Sutton. The most damaging evidence came from Hayes Malloy who testified he saw the appellant shoot Donald Sutton. He stated that in December of 1988, appellant offered him $5,000 to kill Sutton. He reported this solicitation to the F.B.I. on December 21, 1988. On December 26, 1988, following a conversation with the appellant, Malloy concluded appellant was likely to have Sutton killed that night. Sometime after 8:30 p.m., Malloy got in a car with appellant at which point appellant pulled out a pistol and showed it to Malloy. As they drove off, Sutton pulled up behind them flashing his high beam headlights and appellant signalled Sutton to follow them. Appellant then offered Malloy $10,000 to "take care" of Sutton but Malloy refused.

The two cars turned in behind a church and stopped. Appellant and Sutton got out of their cars and met each other. Appellant pulled out his gun and shot Sutton. Sutton fell to the ground and appellant then shot him again. As appellant headed back to the car, Malloy jumped out and went to check on Sutton. Appellant then drove his car away, leaving Malloy at the scene.

The State also introduced the testimony of Clarence Gabby Wells and Kenneth L. Gardner. Wells testified that, before Sutton was killed, appellant told him on two occasions he intended to kill Sutton. He further stated that after appellant's arrest, he heard appellant tell Malloy he wanted him to take the murder charge for him. Witness Gardner testified appellant told him he killed Sutton at a church.

Appellant raises several issues on appeal. We first address his exceptions relating to the tire tread evidence.

## I.

At trial, the State introduced evidence that tire tracks found near Sutton's body were those of Goodyear Vector tires and that appellant's automobile had that brand. Appellant challenges several rulings of the trial judge relating to the tire tread evidence.

## A.

First and foremost, appellant contends the trial judge erred in admitting evidence of photographs and ink impressions of the tires on his car arguing this evidence resulted from an illegal search and seizure. The record reflects in connection with an unrelated federal bank robbery charge, appellant had given the F.B.I. a consent to search. The consent stated as follows:

> I, Ronald Stafford Tillman . . . hereby authorize James H. Davis, Michael Marchant and R.D. Johnson, special agents of the Federal Bureau of Investigation . . . to conduct a complete search of my premises located at 208 Meadowbury Drive . . . and my briefcase and my vehicle, a 1988 Buick Riviera. These agents are authorized by me to take from my premises any letters, papers, materials, or other property which they may desire.

Thereafter, the F.B.I. agents took possession of the vehicle, impounding it, and later made it available to the Richland County Sheriff's Department. The Sheriff's Department then made ink impressions and photographs of the tire treads by means of cranking the automobile and moving it.

Over objection, the trial judge allowed the photographs and ink impressions into evidence concluding the written consent authorized the impoundment and ruling there were no violations in appellant's Fourth and Fourteenth Amendment rights and that the harmless cranking of the vehicle and moving of it was reasonable, not intrusive, and not within appellant's expectation of privacy. We agree.

Appellant contends a consent search is only legal if it is kept within the scope of consent and, because the search went beyond the scope of consent, the evidence was not admissible.

There is no question appellant consented for the F.B.I. to search his automobile. Although appellant denied consenting to the seizure of his automobile, the clear language of the consent form signed by him allowed for seizure of the car. Thus, the question becomes whether appellant's Fourth Amendment rights were violated when the Sheriff's Department obtained the evidence in the manner they did.

Appellant's argument that the scope of consent was exceeded is misplaced. First, we note there is no indication in the record of what, if any, limits applied to the consent given by appellant. There is no indication the scope of consent would have been exceeded had the F.B.I., in the same manner, obtained the same evidence. And though consent may very well be limited by the type of activity for which consent has been granted, the question here is not whether the Sheriff's Department had appellant's consent to search the vehicle in connection with a murder charge, but whether appellant had a legitimate expectation of privacy while the car was in the custody of the F.B.I. such that it would prevent the Sheriff's Department from lawfully obtaining the photographs and ink impressions. *See Rawlings v. Kentucky*, 448 U.S. 98, 100 S. Ct. 2556, 65 L. Ed. (2d) 633 (1980) (a legitimate expectation of privacy is necessary to trigger Fourth Amendment protections); *United States v. White*, 766 F. (2d) 1328 (9th Cir. 1985) (the Fourth Amendment prohibits only unreasonable searches and the presence of a privacy expectation is essential in determining the extent of intrusion under the Fourth Amendment).

The U.S. Supreme Court case of *Cardwell v. Lewis*, 417 U.S. 583, 94 S. Ct. 2464, 41 L. Ed. (2d) 325 (1974) involved the issue of the admissibility of evidence obtained from an automobile based on the defendant's Fourth and Fourteenth Amendment rights. In that case, the defendant appeared at the office of the investigating authority for questioning in regard to a murder. The defendant drove his automobile, leaving it at a public commercial parking lot. When defendant was arrested later that afternoon, his car was towed to a police impoundment lot where a warrantless examination was made revealing a tire that matched a cast tire impression made at the crime scene. Paint scrapings were also obtained from the defendant's car.

The court found the issue before them was whether examination of an automobile's exterior upon probable cause invades a right to privacy which the interposition of a warrant requirement is meant to protect. The court noted that the primary object of the Fourth Amendment is the protection of privacy rather than property rights. It went on to point out that, generally, less stringent requirements have been applied to vehicles than to homes or offices, and that the search of an automobile is far less intrusive on the rights protected by the Fourth Amendment than the search of one's person or of a building. It found one has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as a repository of personal effects. What a person knowingly exposes to the public is not a subject of Fourth Amendment protection and, insofar as Fourth Amendment protection extends to a motor vehicle, it is the right to privacy that is the touchstone of inquiry. The Court concluded as follows:

> In the present case, nothing from the interior of the car and no personal effects, which the Fourth Amendment traditionally has been deemed to protect, were searched or seized and introduced in evidence. With the "search" limited to the examination of the tire on the wheel and the taking of paint scrapings from the exterior of the vehicle left in the public lot, we fail to comprehend what expectation of privacy was infringed.

(417 U.S. at 591, 94 S. Ct. at 2470).

\* \* \* \* \* \*

> Under circumstances such as these, where probable cause exists, a warrantless examination of the exterior of a car is not unreasonable under the Fourth and Fourteenth Amendments.

(417 U.S. at 592, 94 S. Ct. at 2470).

The circumstances of the case at hand are very similar to those of the *Cardwell* case.[1] It is difficult to see how the ap-

---

[1] We note the issue of whether the Sheriff's Department had probable cause to examine the automobile was not raised by the appellant at trial nor on appeal.

pellant in this case has any greater expectation of privacy where both automobiles were impounded by legal authorities at the time the evidence was obtained. Whereas the automobile was impounded without specific consent in *Cardwell*, appellant had consented to the seizure of his automobile by the F.B.I. Certainly, the appellant here has no greater expectation of privacy under these facts.[2] We therefore find no error in the admission of this evidence by the trial judge. Further, in light of the overwhelming evidence of appellant's guilt contained in the record, we find any error in the admission of this evidence would have been harmless. *See State v. Bailey*, 298 S.C. 1, 377 S.E. (2d) 581 (1989).

## B.

Appellant next argues the trial judge erred in admitting evidence of tire tracks found near the scene of the crime. Testimony and photographs of tire tracks found at the scene came into evidence. Although there were numerous tire tracks in the area, the investigators took photographs of specific tracks because they appeared to stop in view of Sutton's body. Appellant objected to the introduction of this evidence on the ground there was no proper showing these tracks were connected to the murder. The trial judge overruled the objection finding the testimony the tracks appeared to stop in view of the body was sufficient to connect the tracks to the murder. On appeal, appellant argues the selection of these tracks was too speculative. We disagree.

Evidence is admissible if it logically or reasonably tends to prove or disprove a crime charged or any fact material to the issue. *State v. Hoffman*, 257 S.C. 461, 186 S.E. (2d) 421 (1972). We find the testimony that these particular tracks stopped in view of the body more than sufficient to logically tie such evidence to the crime. The fact that

---

[2] There is no indication of how the evidence of the tire tread of defendant's car was obtained in *Cardwell*. Nevertheless, we find the minimal intrusion used to obtain the evidence in the case at hand has no impact on the outcome of this case in light of the allowance of paint scrapings in *Cardwell* and other cases. *See Deshazier v. State*, 155 Ga. App. 526, 271 S.E. (2d) 664 (1980). *See* also *United States v. White*, supra, citing *Cardwell v. Lewis*, supra (to identify a vehicle, officers may scrutinize its exterior to the extent of scraping off a paint sample and making a cast of the tire tread and neither action will constitute a search).

there may have been numerous other tracks at the scene goes to the weight of the evidence, not its admissibility. The determination of the admissibility of evidence is largely within the discretion of the trial judge. *State v. Livingston*, 282 S.C. 1, 317 S.E. (2d) 129 (1984). We find no abuse of his discretion.

## C.

Appellant also contends the trial judge erred in relation to several aspects of an expert witness' opinion. He first argues the witness was improperly qualified as an expert. We disagree.

Bruce Hall is the manager of a Goodyear tire store and has been employed with Goodyear for six years. He has attended classes on recognizing trend patterns of Goodyear tires and stated he could identify different makes of tires because of his training and the experience of seeing virtually every kind of tire in his store. Over objection, the trial judge qualified him as an expert in distinguishing tire patterns.

During direct examination, Hall identified the tire tracks found at the scene as coming from Goodyear Vector tires and also identified tires on appellant's car as being Goodyear Vectors. He further testified that only around two percent of the tires sold in the store he managed were Vectors.

The decision to qualify an expert is in the sound discretion of the trial judge. *State v. Caldwell*, 283 S.C. 350, 322 S.E. (2d) 662 (1984). We find the record here supports the trial judge's qualification of Hall as an expert in distinguishing tire patterns.

Appellant also argues the admission of this evidence was erroneous because it was speculative in nature. We disagree. As previously noted, we find the testimony that the tire tracks stopped in view of the body was sufficiently connected to the crime such that admission of this evidence was proper.

Finally, appellant appears to argue the testimony of the expert witness that "around two percent of the tires just sold out of my location were Goodyear Vectors" was improperly admitted over objection. We first note this testimony initially came in without objection. Further, when the appellant later objected, the trial judge sustained his objection. We therefore find no error.

## II.

During the trial, the State offered the testimony of one Clarence Gabby Wells. During direct examination, Wells testified he heard appellant tell Malloy to take the murder charge for him because "the Feds got him by the balls." Over objection, the trial judge allowed the statement into evidence.

Appellant contends *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923) prohibited this evidence because it indicated he was guilty of another crime. We disagree. It is clear this evidence was offered, not to show that appellant had committed another crime, but to show his state of mind at the time he made a statement against his interest. *See State v. Plyler*, 275 S.C. 291, 270 S.E. (2d) 126 (1980) (as a general rule, statements of declarations made by one accused of a crime are admissible against him). Evidence logically relevant to establish a material element of the offense charged is not to be excluded merely because it incidentally reveals the accused's guilt of another crime. *State v. Green*, 261 S.C. 366, 200 S.E. (2d) 74 (1973). Here, the testimony did not even necessarily reveal appellant's guilt of another crime. We find any reference to a federal crime was so vague that its probative value outweighed any possible prejudice.

## III.

Appellant next contends the trial judge erred in improperly excluding impeachment evidence concerning State witness Wells. The record shows that, on cross-examination, appellant attempted to impeach Wells by asking whether he had pleaded guilty to an indictment charging him with an assault and battery of a high and aggravated nature which occurred in 1988. After hearing the details of the crime, the trial judge found it was not a crime of moral turpitude and therefore would not allow this evidence.

Because Wells was thoroughly impeached by admission of numerous previous convictions and his acknowledgment he was testifying under an agreement to receive favorable treatment on some outstanding charges, we find the error, if any, in denying admission of evidence on this particular crime was harmless.

## IV.

Finally, appellant contends the trial judge erred in giving an *Allen* charge. We disagree. The record reflects that around 9:30 p.m., after close to four hours of deliberations, the jury sent a note to the trial judge indicating it was hung. The trial judge informed the jury they would start back up at 9:30 the following morning. He excused the jury and then informed counsel he intended to give the jury an *Allen* charge first thing in the morning.

The next morning, the trial judge again informed counsel of his intention to give the jury an *Allen* charge which he proceeded to do despite appellant's objections. Approximately one hour and fifteen minutes later, the jury came back with a guilty verdict.

Appellant contends the trial judge erred in giving the charge because it had an "unnecessarily coercive impact on the jury's decision process." Appellant does not argue any specific error in the content of the charge. Rather, he contends it was coercive because it was given too soon and because the speed with which the jury returned its verdict suggests "the majority view simply prevailed." We disagree.

A trial judge is but discharging his duty to the public and the litigants when he urges the jury to reach a verdict, provided no coercion takes place. *State v. Lynn*, 277 S.C. 222, 284 S.E. (2d) 786 (1981). A reading of the charge given by the trial judge reveals no indication he tried to coerce a verdict. We further find appellant's argument as to the timing of the charge meritless given that the jury had deliberated for almost four hours. *See Hawkins v. State*, 260 Ga. 138, 390 S.E. (2d) 836 (1990). Further, the trial judge, in giving the *Allen* charge, specifically instructed the jury that the verdict must be each juror's "own convictions and not a mere acquiescence in the conclusions of the other jurors. . . ." We therefore find no error in the giving of this charge.

Affirmed.

GARDNER and BELL, JJ., concur.