772 S.E.2d 544

**Paige Weeks JOHNSON, as Personal Representative of the Estate of Christie Lane Valenzuela, Respondent,**

**v.**

**SAM ENGLISH GRADING, INC., Appellant.**

**Appellate Case No. 2012–213307.**

**No. 5315.**

Court of Appeals of South Carolina.

Heard Jan. 6, 2015.

Decided May 6, 2015.

Rehearing Denied June 18, 2015.

Certiorari Denied Oct. 8, 2015.

434

436

438

Charles E. Carpenter, Jr., of Carpenter Appeals & Trial Support, LLC, and James C. (Trey) Cox, III and Danielle F. Payne, both of Grier, Cox, & Cranshaw, LLC, all of Columbia, for appellant.

John Paul Detrick, of Peters Murdaugh Parker Eltzroth & Detrick, PA, of Hampton, Ronald A. Maxwell, Sr., of Maxwell Law Firm, of Aiken, L. Lisa McPherson, of McWhirter Bellinger & Associates, PA, of Lexington, and Robert Norris Hill, of Law Office of Robert Hill, of Lexington, for respondent.

KONDUROS, J.

In this appeal from a negligence action, Sam English Grading, Inc. (The Company) contends the trial court erred in admitting certain evidence and denying its motions for directed verdict or judgment notwithstanding the verdict (JNOV). It also argues the trial court erred in giving a coercive version of an *Allen*[1] charge. We affirm.

---

1. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

## FACTS/PROCEDURAL HISTORY

On August 7, 2009, Michael Valenzuela was driving his motorcycle on Redds Branch Road in Aiken County, with his wife, Christie Valenzuela, as a passenger on the back. The speed limit was forty-five miles per hour, and Michael testified he was driving between forty to forty-five miles per hour. As they approached the driveway to Owens Corning (Corning), Christie tapped Michael on his side to alert him to a problem. Michael did not see anything at first and then noticed a lot of dust coming from a large piece of equipment, a pan [2], driving on a private driveway owned by Corning, towards Redds Branch Road, which was about twenty to thirty feet away from the intersection. Michael estimated the pan was traveling at least thirty miles per hour. Michael believed the driver did not see him and they were going to crash if he continued driving his motorcycle, so after braking and skidding, he "threw the [motorcycle] down." As a result, Christie died and Michael suffered injuries. The pan did not enter the roadway but stopped by making a quick right turn and coming to rest on top of the stop sign. The motorcycle and pan came to rest within five to ten feet of each other.

The Company has collected Corning's debris for many years. Every few years, the Company would use the pan to take dirt from a pit Corning owned and move it to fill Corning's landfill, which required it to cross Redds Branch Road.

Paige Weeks Johnson, as personal representative of Christie's estate, brought an action for negligence against the Company for acts including the failure to warn with signs or other devices the motoring public of the danger the Company created. At trial, Michael testified he had one to two seconds to react. He testified no flagman was near the intersection or anywhere else near the site but he wished a sign, a flagman, or some kind of warning had been present. Michael stated he also wished the driver of the pan would have acknowledged him once he was skidding. He provided the driver did not begin braking until Michael had already put his motorcycle

---

**2.** The pan was also referred to as a scraper. It weighed around 73,000 pounds and was forty-one feet long and twelve feet tall.

down. Michael testified that before the day of the accident, he had not driven though that area in the last ten years.

Three witnesses testified, over the Company's objections, about prior incidents with the Company's equipment at the intersection. Ann Johnson testified she frequently traveled on Redds Branch Road by the driveway and it was dangerous because equipment was always going back and forth across the road. She provided that a few days prior to the accident, as she passed the driveway, she looked in her rearview mirror and a "huge piece of equipment just zoomed across right behind [her]." She indicated she had never seen a flagman or warning signs at the site.

Laura Boozer testified she traveled by the incident site up to six or eight times a day because she worked at Corning's plant. She provided that about a month before the Valenzuelas' accident, she and her husband were driving down the road and her husband had to slam on his brakes to avoid hitting the pan crossing the road. She testified no flagman or warning signs were in the area. She indicated that because she and her husband were familiar with the spot, they would slow down and watch for trucks in the road.

Virginia Gunter testified she had regularly driven past the intersection where the accident occurred for many years. She indicated it was rare for the equipment to stop and she had to remind herself to slow down and look around when she drove through the area. She stated she had never seen a flagman or warning signs there.

The driver of the pan for the Company, Jeffery D. Lewis, testified that another employee, Johnny Tindel, directed him to come across the street just before the accident. Lewis believed this meant no traffic was coming and he could proceed through the intersection without stopping. When Lewis was about thirty feet from the intersection, Tindel motioned for him to stop. Lewis glanced to his left and saw the motorcycle and began braking and turned sharply to the right. He knocked over the stop sign with the pan. Lewis testified there was no way for Michael to tell he was going to brake and turn to the right to avoid entering the road. Lewis indicated the pan was not loaded at the time of the accident and was able to move faster than when it was loaded. Lewis

also testified that on a typical day, he would drive back and forth across the road at least fifty times. He testified no warning signs were on the road the day of the accident.

Eric Pruitt, a dump truck driver, was regularly at the landfill and observed the accident. He believed Lewis was going to enter the road but instead made a right turn and ran over the stop sign. Pruitt testified Tindel acted as a spotter for Lewis, looking for traffic on Redds Branch Road.

James A. McLaurin, a state trooper at the time of the accident, was dispatched to the scene of the accident. He testified he did not notice any evidence of a flagman but did speak to Tindel. McLaurin believed Tindel was responsible for letting Lewis know whether it was clear or not clear for him to cross Redds Branch Road. He also testified that Christopher English (Chris), the co-owner of the Company, told him he had installed the stop sign at the end of the private driveway. During McLaurin's testimony, Johnson introduced into evidence, over objection, a contract between the Company and Corning from 1984. McLaurin indicated the contract specified advance warning signs should be placed one thousand feet from where trucks were entering the highway. He provided that was consistent with where the state normally places such signs. He further testified the contract required a flagman sign at five hundred feet from where trucks enter the highway, which was an adequate distance to warn the public. He stated these measures are for the safety of the motoring public.

Chris testified about a contract the Company had with Corning which had been in existence since 2009. That contract mandated the Company provide a flagman and was in existence at the time of the accident. He also testified that regarding the time in question, a flagman was not at the site. He stated the flagman was only necessary for flagging his equipment across the road, not for the public's safety. He provided he previously had a flagman directing the public at the intersection but stopped providing one when the flagman was almost hit by a motorist who refused to stop. Chris also testified an encroachment permit referenced in the contract required advance warning signs but those warning signs were not necessary if the flagman was not directing public motor-

ists. He indicated he operated the pan when Lewis did not. Chris stated he placed the stop sign at the private drive but told his drivers they did not have to stop at it if they had someone motioning traffic was clear. He testified Tindel's main job was to sweep debris off the road.

Samuel Curtis English, Chris's brother, worked for the Company and testified Tindel's job was to use the equipment to sweep dirt not to control traffic. He testified the Company did not use a flagman.

The video deposition of Clifford A. Merritt, a professional engineer with Corning, was played for the jury. Merritt was involved with the Company and Corning's contract to construct an earthen perimeter berm [3] at the landfill. He testified Corning was required to get an encroachment permit in 1984 from the South Carolina Highway Department but it was now expired because it was no longer needed. He indicated because the permit was needed to do work along a public road, Corning needed it when it constructed the driveway. The permit required whoever was crossing the road with a piece of equipment to have a flagman and advance warning signs. He stated that even though the permit expired, the guidelines and the need for a flagman and warning signs were still required. He testified the Company agreed to the terms requiring the flagman and warning signs.

He also provided he issued an addendum to the contract dated May 22, 2009, that required the Company to provide a flagman and maintain road crossing signs and other road crossing safety measures in compliance with the 1984 encroachment permit. Merritt testified the Company was aware of the requirements for a flagman based on the previous construction projects it had done for Corning. Merritt indicated Corning required the flagman and signs to ensure proper traffic control and safety on Redds Branch Road and the Company was aware of that. Merritt also testified he had observed the flagman and warning signs at the incident site over the years during periodic reviews. He provided that the flagman and warning signs were only required during the time periods when an earthen berm was being constructed. Con-

---

3. A berm is a small hill or wall of dirt or sand.

struction of an earthen berm started in August 2009 and finished in September or October 2009.[4]

Kelly B. Kennett testified for Johnson as an expert in accident reconstruction. When asked if he felt like a flagman was needed at the intersection, he replied:

[W]hen you have site distances and roadway configurations that just do not allow a motorist to see either a motorist driving a [pan] going this way or a motorist on Redds Branch Road here, then you need a different method to alert people and, certainly, a flagman is one of those ways.

He further indicated:

[T]he desired effect is just like they are out on the highway or whatever. I mean, hopefully, you slow down. You pay attention. You get additional time to perceive and react because you're going more slowly. So, you know, again, it just gives people notice from something other—you don't have to wait to actually see the hazard. You get notice before you get to the hazard that something is coming.

Kennett also testified that based on his review of the evidence gathered from the scene, the pan was not going to stop at the stop sign with ordinary braking. Kennett explained:

In this particular case the [pan] is literally 20 feet from the intersection at its unbroken speed. Now it turns out it progresses very—not very much more distance and it does this hard 90–degree turn and it turns out that it comes out of short of the intersection, but at 20 feet from ... an intersection at an unbroken, unchecked speed with no effective braking, that's going to appear to be an imminent hazard to ordinary motorists.

The Company moved for a directed verdict, arguing it had no duty to stop at the stop sign, have advance warning signs, or have a flagman. It also asserted Johnson had not proved proximate cause. The trial court denied the motion, finding the record contained ample evidence to present a jury question. The company renewed its motion for directed verdict at the close of its case, which the trial court again denied.

---

4. Lewis, the driver of the pan, indicated that at the time of the accident, the Company had begun the process of building the berm.

Following closing arguments, the trial court charged the jury, and the jury began deliberating at 11:45 a.m. on the Friday before Labor Day. At 2:04 p.m., the trial court addressed the jury regarding a note it sent asking what certain code sections provided, and the jury returned to deliberations at 2:14 p.m. At 5:40 p.m., the trial court brought the jury back into the courtroom after it sent a note asking, "At what point do we declare a hung jury?" The trial court gave the jury an *Allen* charge and stated it could order dinner for the jury and stay until "nine, ten, eight, whatever you want to stay to. If we can't agree, we can come back tomorrow, Saturday. If you don't want to come back tomorrow we'll come back Tuesday morning. . . ." The court further stated:

> You have done a super good job and I ask that you go back and let's give it a good faith stab. If you can't get it done tonight, we'll come back in the morning or if you don't want to come back on Saturday we can come back Tuesday and I'll be glad—you're probably tired of pizza. I am. It's the third time I've had it this week. My wife is out of town. I'm sick of it; so we'll get something different or if you want to—if you want to go home about 8 o'clock or 9 o'clock and come back fresh in the morning if we can't reach—but we're going to give it a shot.

The trial court also stated:

> I ask, you know, please, on behalf of these parties and all my court personnel have been here all week. We've all put in a lot of time. Nobody has put in . . . harder time than y'all have. Y'all have the hardest decision. I am going to ask that you respect each other and try to work it out. Now, do you want me to order you supper or do you want to wait a little while and let me know? Why don't you send me a note [at] 6:30 or a quarter 'til 7 and let me know how we are.

Additionally, the trial court stated:

> Y'all don't go back there and fuss at me now, please. That's what the law requires me to do when we reach this situation. That was—what I was citing y'all was an 1898 case of the [United States] Supreme Court; so y'all aren't the first jury or the first trial that couldn't come to an agreement. You won't be the last, but every one of them that's faced

with this situation I urge you, please, consider each other's opinion and in the spirit of compromise or whatever let's reach a verdict in this case. Thank you. Madam forelady, I'll just wait to hear from you about whether you want me to order you something or whether you want to come back tomorrow.

Following the trial court's statements, the Company objected that the instruction indicated the jury had to reach a verdict and that was not what the law required. The trial court overruled the objection, stating "I don't think my instructions said that at all. I asked them, urged them to try to. I told them we'd come back, but we hadn't been out but less than six hours; so that's not—I certainly didn't indicate that to them." At 7:04 p.m., the jury came back into the courtroom because it had some legal questions and assured the trial court it was being civilized. The trial court answered the questions and sent the jury out to continue deliberating at 7:14 p.m. At 8:47 p.m., the jury returned with a verdict.

The jury found the Company was negligent and its negligence proximately caused Christie's death. The jury also found Michael was negligent and proximately caused Christie's death. The jury found Michael was 35% at fault and the Company was 65% at fault. The jury found Christie's estate sustained $2.9 million in actual damages. The jury also found the Company's conduct was willful, wanton, careless, or reckless. Following deliberations on the amount of punitive damages [5], the jury determined Johnson was not entitled to punitive damages. The Company filed post-trial motions, which the trial court denied.[6] This appeal followed.

**LAW/ANALYSIS**

### I. Admission of Contract

The Company argues the trial court erred in admitting into evidence a private contract between it and Corning. We disagree.

---

**5.** Those deliberations occurred on the Tuesday following Labor Day.

**6.** The post-trial motions are not included in the record, only the trial court's order denying them. The order does not specify the grounds for the motions.

 "The admission of evidence is within the trial court's discretion." *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.,* 343 S.C. 424, 439, 540 S.E.2d 113, 121 (Ct.App.2000). "The court's ruling to admit or exclude evidence will only be reversed if it constitutes an abuse of discretion amounting to an error of law." *Id.* "The trial court has broad discretion in the admission or rejection of evidence and will not be over-turned unless it abuses that discretion." *Davis v. Traylor,* 340 S.C. 150, 157, 530 S.E.2d 385, 388 (Ct.App.2000). "An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support." *Menne v. Keowee Key Prop. Owners' Ass'n, Inc.,* 368 S.C. 557, 568, 629 S.E.2d 690, 696 (Ct.App.2006) (internal quotation marks omitted). "To warrant a reversal based on the admission of evidence, the appellant must show both error and resulting prejudice." *Conway v. Charleston Lincoln Mercury Inc.,* 363 S.C. 301, 307, 609 S.E.2d 838, 842 (Ct.App.2005).

 The trial court has wide discretion in determining the relevancy of evidence. *Moore v. Moore,* 360 S.C. 241, 257–58, 599 S.E.2d 467, 476 (Ct.App.2004). "Evidence is relevant and admissible if it tends to establish or make more or less probable some matter in issue." *Johnson v. Horry Cnty. Solid Waste Auth.,* 389 S.C. 528, 534, 698 S.E.2d 835, 838 (Ct.App.2010) (citing Rules 401 and 402, SCRE). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consider-ations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE. "Unfair prejudice means an undue tendency to suggest a decision on an improp-er basis." *Johnson,* 389 S.C. at 534, 698 S.E.2d at 838 (internal quotation marks omitted).

 "Generally, a third person not in privity of contract with the contracting parties does not have a right to enforce the contract." *Hardaway Concrete Co. v. Hall Contracting Corp.,* 374 S.C. 216, 225, 647 S.E.2d 488, 492 (Ct.App.2007). "However, if a contract is made for the benefit of a third person, that person may enforce the contract if the contracting parties intended to create a direct, rather than an incidental or

consequential, benefit to such third person." *Id.* at 225, 647 S.E.2d at 492–93 (internal quotation marks omitted).

> A tortfeasor may be liable for injury to a third party arising out of the tortfeasor's contractual relationship with another, despite the absence of privity between the tortfeasor and the third party. The tortfeasor's liability exists independently of the contract and rests upon the tortfeasor's duty to exercise due care. This common law duty of due care includes the duty to avoid damage or injury to foreseeable plaintiffs.

*Dorrell v. S.C. Dep't of Transp.*, 361 S.C. 312, 318, 605 S.E.2d 12, 14–15 (2004) (citations omitted). South Carolina courts have "allowed the imposition of tort liability to a third party as a result of contractual obligations despite the absence of privity between the tortfeasor and the third party. The key inquiry is foreseeability, not privity." *Terlinde v. Neely*, 275 S.C. 395, 399, 271 S.E.2d 768, 770 (1980) (citation omitted).

 The trial court ruled in limine to allow Johnson to amend the pleadings to address the contract, and the Company did not raise this as an issue in its brief. During trial, the court overruled the Company's objections to the contract.

The contract was introduced into evidence during the testimony of former state trooper McLaurin, who was dispatched to the scene of the accident. McLaurin read the contract and testified it referred to advance warning signs and where they should be placed. He testified the purpose of a flagman was for the safety of the public.

Merritt, the Corning employee, testified the Company and Corning had a current contract that had the same conditions as the 1984 contract. Therefore, the age of the 1984 contract and its expiration did not prejudice the Company because the same conditions were in the current contract. Merritt testified the purpose of the warning systems provided by the contract were to ensure safety. It was foreseeable the public and the Company's equipment could have an accident without the warning signs and flagman in place. Accordingly, the trial court did not err in admitting the contract.

## II. Admission of Witnesses' Testimonies

The Company contends the trial court erred in allowing multiple witnesses to testify about previous incidents at the same intersection with the Company. We disagree.

"The admission of evidence is within the trial court's discretion." *R & G Constr.*, 343 S.C. at 439, 540 S.E.2d at 121. "An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support." *Menne*, 368 S.C. at 568, 629 S.E.2d at 696 (internal quotation marks omitted). "To warrant a reversal based on the admission of evidence, the appellant must show both error and resulting prejudice." *Conway*, 363 S.C. at 307, 609 S.E.2d at 842.

 The trial court has wide discretion in determining the relevancy of evidence. *Moore*, 360 S.C. at 257–58, 599 S.E.2d at 476. "Evidence is relevant and admissible if it tends to establish or make more or less probable some matter in issue." *Johnson*, 389 S.C. at 534, 698 S.E.2d at 838 (citing Rules 401 and 402, SCRE). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE. "Unfair prejudice means an undue tendency to suggest a decision on an improper basis." *Johnson*, 389 S.C. at 534, 698 S.E.2d at 838 (internal quotation marks omitted).

[I]n actions based on negligence it is irrelevant to prove that the plaintiff or the defendant has on similar occasions been careful or negligent; in like manner it is irrelevant to show that either party has hitherto had the reputation of being prudent or negligent.... [T]he best authorities clearly sustain the doctrine that the fact of a person having once or many times in his life done a particular act in particular way does not prove that he has done the same thing in the same way upon another and different occasion.... The weight of authority seems to be against admitting evidence of general conduct under proven circumstances to show conduct of the same kind under similar circumstances on a particular occasion, when there were eyewitnesses of the occur-

rence.... Evidence of habit is frequently rejected when offered for the purpose of showing that a person acted in accordance with such habit on a particular occasion, especially where direct evidence is or can be produced, or the act is otherwise fully proved. *Holcombe v. W.N. Watson Supply Co.*, 171 S.C. 110, 117, 171 S.E. 604, 606 (1933) (internal quotation marks omitted).

However, evidence of similar accidents, transactions, or happenings is admissible in South Carolina when a special relation between them would tend to prove or disprove some fact in dispute. *Whaley v. CSX Transp., Inc.*, 362 S.C. 456, 483, 609 S.E.2d 286, 300 (2005); *Reed v. Clark*, 277 S.C. 310, 314, 286 S.E.2d 384, 387 (1982); *Pittman v. Galloway*, 281 S.C. 70, 75, 313 S.E.2d 632, 635 (Ct.App.1984). "This rule, which governs the admissibility of prior accidents, transactions, or happenings, is based on relevancy, logic, and common sense." *Whaley*, 362 S.C. at 483, 609 S.E.2d at 300 (internal quotation marks omitted). "Because evidence of other accidents may be highly prejudicial, [a] plaintiff must present a factual foundation for the court to determine that the other accidents were substantially similar to the accident at issue." *Id.* (alteration by court) (internal quotation marks omitted). "Evidence of similar facts, conditions, or occurrences is inadmissible if not pertinent to the issues in the case." *Burbach v. Investors Mgmt. Corp. Int'l*, 326 S.C. 492, 501, 484 S.E.2d 119, 123 (Ct.App.1997) (Goolsby, J., dissenting) (quoting *Martin v. Amusements of Am., Inc.*, 38 N.C.App. 130, 247 S.E.2d 639, 642 (1978) ("[E]vidence of similar occurrences or conditions may be admitted upon a showing of substantial identity of circumstances and reasonable proximity in time." (internal quotation marks omitted))).

In *Oconee Roller Mills, Inc. v. Spitzer*, 300 S.C. 358, 359–60, 387 S.E.2d 718, 719 (Ct.App.1990), a negligence case involving "an accident between a tractor-trailer and a farm animal," this court found "no error in the admission of the evidence of [a] prior escape" of a cow. "One witness testified the incident occurred within nine months of the accident. The jury could assess the relevance of the evidence as it pertained to the issue of negligence in guarding the cattle. There is no requirement that the prior incident involve the same animal." *Id.*

■ In *Burbach*, 326 S.C. at 498, 484 S.E.2d at 122 (en banc), an action by tenants against their landlord, the tenants argued that even if the testimony of the landlord's prior tenant was not properly admissible under the Unfair Trade Practices Act, it was admissible on the issue of punitive damages. This court agreed finding it "was relevant to the first five factors set forth in *Gamble* [7]. Without the evidence, the trial judge could not have conducted the required post-trial verdict review of punitive damages." *Id.* at 498-99, 484 S.E.2d at 122 (citation omitted).

> [T]o ensure that a punitive damage award is proper, the trial court shall conduct a post-trial review and may consider the following: (1) defendant's degree of culpability; (2) duration of the conduct; (3) defendant's awareness or concealment; (4) *the existence of similar past conduct;* (5) likelihood the award will deter the defendant or others from like conduct; (6) whether the award is reasonably related to the harm likely to result from such conduct; (7) defendant's ability to pay; and finally, (8) as noted in *Haslip*, 'other factors' deemed appropriate.

*Gamble*, 305 S.C. at 111-12, 406 S.E.2d at 354 (emphasis added).

■ The witnesses testified about situations in which they had near misses with the Company's pan; these were similar acts. The same driver, equipment, and spotter were always used and had come very close in the past to causing an accident. The testimonies showed the failure to have a flagman and warning signs was a continuing issue for the Company. They also showed the Company had knowledge the pan was coming close to causing accidents and thus an accident was foreseeable. One of the incidents had occurred just days before the accident in this case. Therefore, the trial court did not abuse its discretion in finding the testimonies admissible. Further, even if the testimonies were not admissible as evidence the Company was negligent in Valenzuela's accident, like in *Burbach*, the testimonies were relevant and thus admissible to show the Company had previous instances of what could be seen as carelessness at the intersection, which went

---

7. *Gamble v. Stevenson*, 305 S.C. 104, 406 S.E.2d 350 (1991).

to Johnson's claim for punitive damages.[8] Accordingly, the trial court did not abuse its discretion in allowing the testimonies.

## III. Directed Verdict/JNOV

The Company asserts the trial court erred in failing to grant it a directed verdict or JNOV.[9] It contends Michael's negligence, not the Company's, caused the accident and the pan driver committed no negligent acts. It also maintains if we reverse the trial court's admissions of evidence complained of above, no evidence was presented it was liable for the accident.

"An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority." *Bryson v. Bryson*, 378 S.C. 502, 510, 662 S.E.2d 611, 615 (Ct.App.2008). "[S]hort, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review." *Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct.App.2001). When a party provides no legal authority regarding a particular argument, the argument is abandoned and the court will not address the merits of the issue. *State v. Lindsey*, 394 S.C. 354, 363, 714 S.E.2d 554, 558 (Ct.App.2011).

This issue is abandoned. In the Company's first argument, it does not provide any case law, and it does not

---

8. The punitive damages portion of the trial was bifurcated so the jury would not hear information about the Company's financial standing while it considered actual damages.

9. The record does not contain a motion for JNOV. The appellant has the burden of presenting an appellate court with an adequate record. *Harkins v. Greenville Cnty.*, 340 S.C. 606, 616, 533 S.E.2d 886, 891 (2000). "The appellate court will not consider any fact [that] does not appear in the record on appeal." Rule 210(h), SCACR; *see also Sheppard v. State*, 357 S.C. 646, 657 n. 3, 594 S.E.2d 462, 469 n. 3 (2004) (refusing to consider the State's failure to produce a witness's prior statements because the statements were not included in the record). Motions must be made on the record to be preserved for appellate review. *Hundley v. Rite Aid of S.C., Inc.*, 339 S.C. 285, 306, 529 S.E.2d 45, 57 (Ct.App.2000). Accordingly, we will not consider the Company's argument regarding the JNOV.

indicate how the trial court erred. It only explains the ways it alleges Michael was the only negligent party. In its argument regarding directed verdict and JNOV, it again cites no case law and simply argues that without the wrongly admitted evidence, Johnson provided no evidence of its negligence and thus it was entitled to a directed verdict or JNOV. Neither of these sections sufficiently makes an argument, and thus, these two arguments are abandoned.

## IV. *Allen* Charge

The Company argues the trial court erred in giving a version of an *Allen* charge that was coercive. We disagree.

"An *Allen* charge is an instruction advising deadlocked jurors to have deference to each other's views, that they should listen, with a disposition to be convinced, to each other's argument...." *State v. Lee–Grigg,* 374 S.C. 388, 418 n. 1, 649 S.E.2d 41, 57 n. 1 (Ct.App.2007) (internal quotation marks omitted), *aff'd,* 387 S.C. 310, 692 S.E.2d 895 (2010). "Review of an *Allen* charge requires this court to consider the charge in light of the accompanying circumstances." *State v. Williams,* 344 S.C. 260, 264, 543 S.E.2d 260, 262 (Ct.App.2001). "Whether an *Allen* charge is unconstitutionally coercive must be judged in its context and under all the circumstances." *Dawson v. State,* 352 S.C. 15, 20, 572 S.E.2d 445, 447 (2002) (internal quotation marks omitted). "The trial judge has a duty to urge the jury to reach a verdict, but he may not coerce it." *Williams,* 344 S.C. at 263, 543 S.E.2d at 262 (internal quotation marks omitted). When the trial court's comments have clearly coerced the jury into reaching a verdict, appellate courts have found a violation of the statute and mistrial the appropriate remedy. *Buff v. S.C. Dep't of Transp.,* 342 S.C. 416, 422, 537 S.E.2d 279, 282 (2000).

"Factors to be considered in determining whether a charge is coercive include the length of the deliberations prior to the charge, the length of the deliberations following the *Allen* charge, and the total length of deliberations." *Williams,* 344 S.C. at 264, 543 S.E.2d at 262–63 (footnotes omitted). "The trial judge may not indicate to or threaten the jury that they must agree or, failing to agree, they will remain in the jury room for a specified length of time." *Id.* at 264, 543 S.E.2d at 263. "In addition, a trial judge may not direct

the *Allen* charge towards the minority voter(s) on the panel." *Id.* In *Tucker v. Catoe,* 346 S.C. 483, 492–94, 552 S.E.2d 712, 716–18 (2001), the court "considered various factors to determine whether the given *Allen* charge was unconstitutionally coercive." *Dawson,* 352 S.C. at 20, 572 S.E.2d at 447. "One factor addressed whether the trial judge inquired into the jury's numerical division; another considered whether the charge spoke specifically to the minority jurors." *Id.*

> When a jury, after due and thorough deliberation upon any cause, returns into court without having agreed upon a verdict, the court may state anew the evidence or any part of it and explain to it anew the law applicable to the case and may send it out for further deliberation. *But if it returns a second time without having agreed upon a verdict, it shall not be sent out again without its own consent unless it shall ask from the court some further explanation of law.*

*Buff,* 342 S.C. at 420, 537 S.E.2d at 281 (emphasis added by court) (quoting S.C.Code Ann. § 14–7–1330 (1976)) (internal quotation marks omitted).

In *Williams,* 344 S.C. at 265, 543 S.E.2d at 263,

> The jury deliberated for approximately two hours on Tuesday before the trial judge sent them home for the evening. They resumed deliberations for one hour and a half the following morning before notifying the trial judge they were deadlocked. After the *Allen* charge, the jury deliberated less than twenty minutes, reheard testimony, and deliberated for approximately two more hours before reaching a verdict. The total deliberations took less than six hours.

This court found "no coercion in the timing of the *Allen* charge or in the total length of deliberations." *Id.*

The court also found "the trial judge did not coerce a verdict by implying the jury would have to deliberate indefinitely. The judge informed the jurors he would make arrangements for their comfort should the jurors get tired or become hungry." *Id.* The court determined:

> Considering the *Allen* charge as a whole, it is clear that the judge was solicitous of the welfare of the jurors and his remarks concerning getting a motel room for them or providing a rest period for them were not calculated to be of a threatening nature, but were genuine expressions of con-

cern for their comfort and welfare. We therefore conclude that the charge was not coercive.

*Id.* at 266, 543 S.E.2d at 264.

In *State v. Ayers*, 284 S.C. 266, 268–69, 325 S.E.2d 579, 580–81 (Ct.App.1985), the jury deliberated for a little over two hours, requested a recharge of a statute, and deliberated further for more than an hour. The jury then reported it could not reach a verdict. *Id.* at 269, 325 S.E.2d at 581. The forelady told the trial court, " 'no matter how long we stay in that room, or if we stayed in here two long weeks or forever, we would never be able to change some of the convictions.' " *Id.* The trial court responded, " 'I am prohibited from declaring a mistrial until a substantial time has elapsed in terms of the jury being able to consider the evidence and the testimony.' " *Id.* The trial court further said he could either make hotel accommodations for the jury or let it continue deliberating and commented "on the expense of operating the judicial system and the importance of bringing matters to a conclusion." *Id.* About two hours later, the jury reported it was making progress, but defense counsel moved for a mistrial, arguing the verdict was being coerced. *Id.* This court reviewed the *Allen* charge as a whole and concluded the trial court's instructions were not coercive. *Id; see also State v. Tillman*, 304 S.C. 512, 521, 405 S.E.2d 607, 612–13 (Ct.App. 1991) (concluding the *Allen* charge was not coercive when given after four hours of deliberation and the verdict was rendered one hour and fifteen minutes after the charge). *But see Rowland v. Harris*, 218 S.C. 42, 45–46, 61 S.E.2d 397, 398–99 (1950) (finding the trial court should have granted a mistrial when its actions could have led the jury to believe it would spend the weekend in the jury room until it reached a unanimous verdict); *State v. Simon*, 126 S.C. 437, 445–46, 120 S.E. 230, 233 (1923) (stating the trial court erred by telling the jurors they must remain overnight in a small jury room for fifteen and a half hours unless they could agree on a verdict); *State v. Kelley*, 45 S.C. 659, 663–64, 24 S.E. 45, 47 (1896) (holding the trial court erred when the jury deliberated from 4:00 p.m. one day until 6:00 p.m. the next day without lunch the second day, the jury indicated it could not agree, the judge instructed the jury to retire again, and the foreman responded "[w]e have been in the room for twenty-four hours, and can't agree").

■ The trial court's statement about ordering dinner and about his wife being out of town were not coercive. Additionally, the trial court was not going to force the jury to come back on Saturday; he also offered the option of Tuesday. Reading all of the trial court's instructions together, they were not coercive. The Company takes issue with the concept of the *Allen* charge in general and argues that many states do not allow them. However, South Carolina does allow them. Accordingly, the trial court did not err in giving a version of an *Allen* charge.

## V. Statement to Jury

■ The Company contends Johnson's statement at trial that the employees of the Company were not at fault mandated the trial court to direct a verdict for the Company. In its Appellant's brief, it concedes this issue was not raised at trial but argues this is an additional sustaining ground. However, in its reply brief, it concedes this cannot be an additional sustaining ground because it is the Appellant.[10] However, the Company argues it did not have to raise the issue at trial as it relates to subject matter jurisdiction because "[i]f the employees are not at fault there is nothing for the court to litigate." We find the issue unpreserved.

■ "An appellate court may not, of course, *reverse* for any reason appearing in the record." *I'On, L.L.C.*, 338 S.C. at 421–22, 526 S.E.2d at 724. "[A]n issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review." *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301, 641 S.E.2d 903, 907 (2007) (internal quotation marks omitted). "There are four basic requirements to preserving issues at trial for appellate review. The issue must have been (1) raised to and ruled upon by the trial court, (2) raised by the appellant, (3) raised in a timely manner, and (4) raised to the trial court with sufficient specificity." *Id.* at 301–02, 641 S.E.2d at 907 (internal quotation marks omitted).

10. "[A] respondent ... may raise ... any additional reasons the appellate court should affirm the lower court's ruling, regardless of whether those reasons have been presented to or ruled on by the lower court." *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 419, 526 S.E.2d 716, 723 (2000).

■■■■ "Subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong. The issue of subject matter jurisdiction may be raised at any time including when raised for the first time to an appellate court." *Linda Mc Co. v. Shore,* 390 S.C. 543, 557, 703 S.E.2d 499, 506 (2010) (citation and internal quotation marks omitted). "A court's subject matter jurisdiction is determined by whether it has the authority to hear the type of case in question." *Allison v. W.L. Gore & Assocs.,* 394 S.C. 185, 188, 714 S.E.2d 547, 549 (2011).

■■■■ This argument is not preserved for our review. Despite the Company's contention, this argument does not involve subject matter jurisdiction. Subject matter jurisdiction is the power to hear certain types of cases, and the circuit court has the power to hear negligence actions, as this action was. Therefore, this argument needed to be raised to the trial court. Because it was not, it is not preserved for our review.

## CONCLUSION

Based on the foregoing, the trial court's decision is **AFFIRMED.**

HUFF and SHORT, JJ., concur.